**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | |
|---|---|
| JENNIFER ELLER<br>c/o ARNOLD & PORTER KAYE SCHOLER LLP<br>601 Massachusetts Ave., NW<br>Washington, DC  20001<br><br>            Plaintiff,<br><br>      v.<br><br>PRINCE GEORGE'S COUNTY PUBLIC<br>SCHOOLS<br>14201 School Lane<br>Upper Marlboro, MD 20772<br>Prince George's County<br><br>and<br><br>PRINCE GEORGE'S COUNTY BOARD OF<br>EDUCATION<br>14201 School Lane<br>Upper Marlboro, MD 20772<br>Prince George's County<br><br>and<br><br>MONICA GOLDSON<br>(in her official capacity)<br>14201 School Lane<br>Upper Marlboro, Maryland 20772<br><br>            Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case Number: 18-cv-03649<br>)<br>) FIRST AMENDED COMPLAINT<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## I.    NATURE OF THE ACTION

1.      Plaintiff Jennifer Eller, a woman who is transgender, brings this civil rights action against Prince George's County Public Schools and Prince George's County Board of Education (collectively, "County Defendants"), and Monica Goldson (collectively with County Defendants, "Defendants") for the discrimination, hostile work environment, and retaliation she suffered on

the basis of her sex, gender identity, and transgender status in violation Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); Title IX of the Education

Amendments of 1972, 20 U.S.C. § 1681, *et seq.* ("Title IX"); the Maryland Fair Employment

Practices Act, Md. Code Ann., State Gov't § 20-606, *et seq.* ("Maryland FEPA"); the Prince

George's County, Md., Code, §§ 2-186(a)(3), 2-222, *et seq.* ("PG Code"); 42 U.S.C. § 1981a;

and, pursuant to 42 U.S.C. § 1983, the Fourteenth Amendment of the United States Constitution,

U.S. Const. amend. XIV, § 1.

2.      Title VII, Title IX, the Maryland Fair Employment Practices Act, the Prince

George's County Code, and the Equal Protection Clause all prohibit discrimination on the basis

of sex, including discrimination based on sex stereotypes, gender identity, gender transition, and

transgender status. Nonetheless, Ms. Eller, an English teacher for Prince George's County Public

Schools, was forced to endure discrimination, a hostile work environment, and retaliation during

the course of her employment at Prince George's County Public Schools, unlawful acts that were

willfully ignored or unaddressed by her employer.

3.      Like many transgender Americans, Ms. Eller has not been exempt from being a

victim of discrimination. From 2008 to August 2017, Ms. Eller worked as an English teacher at

Prince George's County Public Schools. Unfortunately, in order to protect her mental and

physical health, Ms. Eller's employment as a public school teacher came to an end when she had

no choice but to resign following years of severe and pervasive incidents of discrimination, a

hostile work environment, and retaliatory acts by Defendants.

4.      While she was incorrectly assigned the sex of male at birth, Ms. Eller is a woman.

5.      Beginning in 2011, Ms. Eller socially transitioned and began living as her true self, consistent with her female gender identity.  Thus, during the period that is the subject of the allegations in the Complaint, Ms. Eller identified, presented, and lived as the woman that she is.

6.      Yet, following her transition, Ms. Eller woke up every day knowing that she would be commuting to a work environment so hostile that it debilitated her mental and physical health. Defendants permitted and created this hostile work environment by the verbal and physical attacks that Ms. Eller sustained on a continual basis in her place of employment due to her sex, specifically her transgender status. As such, Defendants constructively terminated Ms. Eller's employment.

7.      As the school administration ignored her attempts to remedy the discrimination, Ms. Eller engaged in protective action by filing a Discrimination or Harassment Incident Report ("Incident Report"), through Defendants' internal grievance process, and a Charge of Discrimination ("Discrimination Charge") with the Equal Employment and Opportunity Commission ("EEOC"). As a result of Ms. Eller's filings, Defendants took adverse employment action against her.

8.      The EEOC recognized this discriminatory treatment on the part of students, parents, staff, and administration on September 26, 2017, when, after an extensive and thorough investigation, it issued a determination letter finding that there was reasonable cause to believe that Ms. Eller had been subject to unlawful treatment based on her sex and gender in violation of Title VII, and that Defendants retaliated against Ms. Eller for engaging in protected activity.

9.      As a result of the discrimination, hostile work environment and retaliation Ms. Eller experienced in her place of employment, Ms. Eller has suffered emotional distress, loss of

her employment, humiliation, embarrassment, stigmatization, and a loss of dignity at the hands of Defendants.

10.     Accordingly, Ms. Eller brings this action against Defendants in order to remedy the harms they caused her and to ensure that Defendants can no longer unlawfully discriminate against transgender employees, like her, as result of their sex, nonconformity with sex stereotypes, gender identity, gender transition, and transgender status. Specifically, Ms. Eller seeks redress for the injuries she suffered due to Defendants' creation of a hostile work environment and retaliation against her, as well as for Defendants' constructive termination of her employment.

## II.     <u>JURISDICTION AND VENUE</u>

11.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343(a) because the matters in controversy arise under the laws and the Constitution of the United States, including Title VII, Title IX, 42 U.S.C. § 1981a, and 42 U.S.C. § 1983, all of which are laws providing for the protection of civil rights.

12.     This Court has supplemental jurisdiction over Defendants with respect to Plaintiff's state law and County Code claims pursuant to 28 U.S.C. § 1367 because those claims arise from a common nucleus of operative facts and are so related to the claims in the action within the original jurisdiction of the Court that they form part of the same case or controversy.

13.     This Court has the authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure, and 28 U.S.C. §§ 2201 and 2202.

14.     Venue is proper in this District pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices took place in the District of Maryland. Venue is also proper pursuant to 28 U.S.C. § 1391(b), because all of the events or omissions giving rise to Ms. Eller's claims occurred in the District of Maryland.

III.    **PARTIES**

15.     Defendants employed Ms. Eller as a teacher from 2008 until she was forced to resign to protect her mental and physical health on August 18, 2017.

16.     Ms. Eller, at all relevant times, was Defendants' "employee" within the meaning of 42 U.S.C. § 2000e(f), Md. Code Ann., State Gov't § 20-601(c)(1), and PG County Code § 2-186.

17.     Defendant Prince George's County Public Schools is a public school district in the State of Maryland, and has its offices at 14201 School Lane, Upper Marlboro, MD 20772.

18.     Defendant Prince George's County Board Of Education is the official policy-making and oversight body for Prince George's County Public Schools, and has its offices at 14201 School Lane, Upper Marlboro, MD 20772.

19.     County Defendants are "employer[s]" within the meaning of 42 U.S.C. §2000e(b), Md. Code Ann., State Gov't § 20-601(d), and PG County Code § 2-186(a)(5). County Defendants are also an "educational institution" within the meaning of 20 U.S.C. § 1681(c).

20.     Defendant Goldson is the Interim Chief Executive Officer for Prince George's County Public Schools, and has her offices at 14201 School Lane, Upper Marlboro, MD 20772.

21.     Defendant Goldson is a "person" within the meaning of 42 U.S.C. § 1983.

## IV.     ADMINISTRATIVE EXHAUSTION

22.     On June 3, 2015, Plaintiff filed a timely Charge of Discrimination with the EEOC against Prince George's County Public Schools for sex discrimination in violation of Title VII and the MFEPA.

23.     On June 4, 2015, pursuant to Md. Code Ann., Cts. & Jud. Proc. § 5-304, Ms. Eller served timely Notices of Claim with the County Attorney for Prince George's County and the Maryland State Treasurer providing notice of her claims arising out of the discrimination and hostile work environment that she was forced to endure.

24.     By letter dated June 9, 2015, the County Attorney for Prince George's County informed Ms. Eller that Prince George's County is not responsible for matters concerning the Board of Education.

25.     By letter dated June 19. 2015, the Maryland State Treasurer advised that she does not have jurisdiction over matters concerning Prince George's County Board of Education.

26.     On September 26, 2017, the EEOC issued a determination finding reasonable cause to believe that Ms. Eller "was subjected to harassment, based upon her sex and gender identity, and unequal terms and conditions of employment, in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended."

27.     Indeed, after concluding its investigation on Ms. Eller's Discrimination Charge, the EEOC found that:

> [Ms. Eller] was subjected to an environment that contained frequent comments about her sex and surgical status; and in which she was routinely misgendered and subjected to sex stereotypes. [Ms. Eller] sustained such treatment from students, parents, staff, and administration. The evidence further revealed that Respondent was aware of the conditions to which [Ms. Eller] was subjected throughout the period in question and failed to take effective corrective action.

28.    The EEOC referred the matter to the U.S. Department of Justice.

29.    On August 31, 2018, Ms. Eller received a Notice of Right to Sue from the United States Department of Justice ("DOJ"). This action is timely commenced within 90 days of Ms. Eller's receipt of the Notice.

V.    **STATEMENT OF CLAIMS**

    **A.    Ms. Eller's Background**

30.    Jennifer Eller was born in Duluth, Minnesota and raised in nearby Barnum, Minnesota. Ms. Eller studied Religion at Augustana University in Sioux Falls, South Dakota. She also studied Psychology with a focus on youth ministry because she felt a strong call to work with children and provide them with support to build a life worth living and sharing with others.

31.    After graduating from Augustana, Ms. Eller worked as a para-professional at Axtell Park Middle School in Sioux Falls and as a tutor at a Christian adolescent and family counseling center. In 2006, with dreams of becoming a professional writer, Ms. Eller obtained a Masters of Fine Arts at Minnesota State University, Mankato.

32.    Deciding that she wanted to work with children and instill in them a love of literature and learning, Ms. Eller applied for a teaching certification in Maryland.

33.    In 2008, Defendants hired Ms. Eller for a position as an English teacher at Kenmoor Middle School.

34.    In addition to being a teacher, Ms. Eller also happens to be a transgender person. While she was incorrectly assigned the sex of male at birth, Ms. Eller is a woman. Her identity as a woman is just as valid as that of women who were assigned female at birth.

35.    A transgender person is someone whose gender identity diverges from the sex they were assigned at birth. A transgender man's sex is male (despite being assigned the sex of

female at birth) and a transgender woman's sex is female (despite being assigned the sex of male at birth).

36.    A person has multiple sex-related characteristics, including hormones, external and internal morphological features, external and internal reproductive organs, chromosomes, and gender identity. These characteristics may not always be in alignment with each other.

37.    Gender identity—a person's core internal sense of their own gender—is the primary factor in determining a person's sex. Every person has a gender identity. There is a medical consensus that gender identity is innate and that efforts to change a person's gender identity are unethical and harmful to a person's health and well-being.

38.    Gender identity is the primary factor in establishing a person's sex. External genitalia are but one of a number of sex-related characteristics and are not always determinative or indicative of a person's sex.

39.    Gender identity and transgender status are inextricably linked to one's sex and are sex-related characteristics.

40.    A transgender person is someone whose gender identity or expression does not conform to what is typically associated with the sex assigned at birth.

41.    To align sex with gender identity or expression, transgender persons sometimes decide to undergo a process called "transitioning." This process is different for every individual, but often includes a social transition. Social transition can include, among others, "coming out" to friends and family, requesting that others use gender pronouns that match the transgender person's gender identity, socially and/or legally changing the transgender person's name to a name typically associated with their gender identity, wearing clothing and adopting grooming habits stereotypically associated the individual's gender identity, and otherwise living consistent

with their gender identity in all aspects of life. Some transgender persons may also decide or need to transition medically.

42.     Despite increasing visibility, transgender persons are still subject to high levels of discrimination, harassment, and violence. These acts of discrimination include physical violence, insults, and misgendering—referring to a transgender person in ways that do not correctly reflect his or her gender identity.

43.     Regardless of their various manifestations, these acts of discrimination all have pernicious effects. One 2015 study found that forty percent of transgender persons have attempted suicide in their lifetime—nearly nine times the rate of the general population.

**B.      Defendants created a Work Environment in which Ms. Eller was a Victim of Rampant and Severe Discrimination**

44.     Ms. Eller began her employment as an English teacher for Defendants in 2008. Ms. Eller taught at Kenmoor Middle School from 2008 to 2011. In March 2011, Ms. Eller informed the principal at Kenmoor Middle School that she would be transitioning. Ms. Eller began to wear articles of traditionally-feminine attire, and immediately became the target of rampant harassment by staff and students alike. Students called her a pedophile, and the human resources representative, enlisted to help her through the transition, demanded that she present as male and told her that a note from her therapist regarding her transition was "garbage." An assistant principal told Ms. Eller not to wear skirts or dresses because it would make people uncomfortable. Ms. Eller complied, wearing slacks and blouses instead. Because of this abuse, Ms. Eller transferred to Friendly High School prior to the beginning of the 2011-12 school year.

45.     During her tenure at Friendly High School, the harassment directed at Ms. Eller worsened significantly, and she suffered from many of the same acts of discrimination

perpetrated against others in the transgender community. Particularly in the 2015 school year, Ms. Eller became the target of pervasive and severe acts of discrimination based on her gender identity and sex.

46. Failing to create an inclusive and welcoming environment for all students and teachers, Defendants fostered a culture of discrimination and harassment towards transgender employees, like Ms. Eller—a culture wherein the perpetrators were everywhere: students, parents, staff, faculty, and administration.

### 1. *Discriminatory Acts by Students*

47. A number of students targeted Ms. Eller with endless insults and attacks from the moment she began teaching at Friendly High School. The instances of discrimination and insults against Ms. Eller are difficult to count. However, the following is representative of conduct that caused the severely hostile work environment at Friendly High School that she experienced.

48. During the first week of school in 2011, due to Ms. Eller's transgender status, and despite never having known Ms. Eller prior to her transition, students continuously referred to her as "mister" and "he." They also refused to provide their names to Ms. Eller or sit in their assigned seats.

49. On August 23, 2011, the State of Virginia and the surrounding region suffered a magnitude 5.8 earthquake. After the earthquake, students began saying that the earthquake was God's punishment for Defendants' hiring of a "tranny."

50. By December of 2011, some students would ask Ms. Eller about the appearance of her genitals. Others would run unannounced into her classroom, scream "he" or "shim," and immediately run away.

51.     In August 2012, a student who had harassed Ms. Eller in her classroom the prior year (by misgendering her and using transphobic slurs), was again placed in her classroom. One day after school, the student and his friends approached Ms. Eller in the parking lot and verbally assaulted her, including telling her that they would "rape" her and make her "their girlfriend." They then laughed and stated how "funny" that would be because she is "actually a man." Ms. Eller reported the harassment to Mr. Raynah Adams, the Principal, the following day, and the student denied having said anything.  Mr. Adams responded that there was "nothing" the administration could do about it. Ms. Eller then asked to have the student transferred to another classroom, and Mr. Adams responded that doing so would show students it is "okay" to sexually harass her.

52.     In the 2013-14 school year, while Ms. Eller was walking down the hallway at school, a female student in a classroom saw her and yelled that Ms. Eller was "a man" and "a tranny." Ms. Eller asked the instructor in the room, whom she did not know, for the student's name. The instructor gave Ms. Eller the name, and she reported the harassment to Mr. Adams. When Mr. Adams walked up to the classroom, he appeared to recognize the student and said to Ms. Eller, "it isn't worth it," and returned to his office without taking any action.

53.     This abuse and discrimination continued for the next several years.

54.     On August 27, 2015, two female students called Ms. Eller a "guy in a dress" in the school hallway. Although Ms. Eller reported the verbal assault, the administration refused to use the potential security camera footage to identify the perpetrators.

55.     On September 1, 2015, a female student ran away from Ms. Eller, who was merely leaving the school at the end of the day. As she ran, the student shouted, "Son, why you

gotta keep moving this way?! You scary as shit!" Ms. Eller reported the harassment to Mr.
Adams who replied that he could not do anything about it.

56.     On September 23, 2015, a male student identified Ms. Eller and said within
earshot of Ms. Eller: "Look at the tranny!" Ms. Eller reported the harassment to Mr. Adams, who
replied that he would check the security camera footage. However, Mr. Adams never followed-
up with Ms. Eller.

57.     On September 28, 2015, upon seeing Ms. Eller waiting for an elevator, a female
student told her classmate in earshot of Ms. Eller: "That is a HE/SHE!" Ms. Eller reported this
harassment to Mr. Adams but received no follow-up.

58.     On November 10, 2015, a student stepped on Ms. Eller's foot and pressed down
until she cried out in pain. After Ms. Eller told the aggressor to apologize, he called her a
"tranny" and simply walked away, as if aware that he would suffer no consequences.

59.     On December 1, 2015, in the ordinary course of her responsibilities as a teacher,
Ms. Eller asked two students wandering the halls where they were headed. The students
responded that they were on their way to lunch. Because they were not walking toward the
cafeteria, Ms. Eller instructed them to head in the correct direction. They ignored Ms. Eller and
walked away, referring to her by saying within Ms. Eller's earshot, "he ugly as shit." Ms. Eller
reported this incident to Mr. Adams, but received no follow-up.

60.     On April 7, 2016, in the course of her responsibilities as a teacher, Ms. Eller
addressed a group of students loitering next to her classroom. One of the students retorted that
they were skipping class. As the group began to disperse, the students commented within Ms.
Eller's earshot that they should have "ignored him." Ms. Eller immediately reported the incident
to Mr. Adams, who did not follow-up with her.

61.     On May 13, 2016, Ms. Eller substituted for another teacher. During class, one student began video chatting with a friend via his smart phone. The student told his friend that there was a "he-she" substituting his class. Afterward, the student attempted to allow into the classroom a student who was not part of the class. When Ms. Eller prevented the intrusion, the student threatened her with physical violence. Ms. Eller notified Mr. Kevin Thompson, an Associate Principal, who responded by taking over the class. He asked Ms. Eller to submit a disciplinary form regarding the incident. Ms. Eller submitted the form but never received any follow-up from the administration.

62.     On May 19, 2016, as Ms. Eller was walking toward the main office, a student yelled at her: "Mister! Mister! Hey Mister! MISTER!"

63.     On May 25, 2016, while Ms. Eller was monitoring senior students who were completing summer school, a female student entered the library with a classmate. As Ms. Eller approached the student, the student told her classmate, "I'm not speaking to it; I'm speaking to someone else." Ms. Eller informed the student that the library was closed because the seniors were completing their lessons. The student then attempted to get the attention of Ms. Sharon Gibson, the Librarian. During the ensuing conversation, the student continuously referred to Ms. Eller as "he" and "him."

64.     Ms. Eller then escorted the student to the main office to file a disciplinary report. While there, Ms. Capparata, a Guidance Counselor, and Ms. Robin Pope-Brown, a Vice Principal, talked to the student, who refused to refer to Ms. Eller using the proper female pronouns. Instead, the student stated the following in reference to Ms. Eller: "he is a man," "he can't just change in sex," "if I don't believe he's a woman, he ain't," and "you can tell just by looking at him that he's a man." Although the student was given in-school suspension, an

- 13 -

unusual occurrence of discipline following this type of incident, the discipline was insufficient. Less than a month later, on June 13, 2016, as Ms. Eller was walking in a hallway, the same student came up to her and said, "Why you always in my face?!"

65.     On June 15, 2016, a group of three students attempted to enter the library, where Ms. Eller was conducting online sessions for seniors who had failed to graduate. When Ms. Eller and another teacher told them to go back to their class, one of the students asked his friend, "What is it?" The friend replied, "I don't know. Creepy."

66.     To the best of Plaintiff's information and belief, Defendants took little, no, or ineffective action in response to any of the afore-described incidents of discrimination, abuse, harassment, and even physical assault.

### 2.     Discrimination by Administration, Staff, and Parents

67.     In addition to some students' insults and attacks, the administration and parents also proactively engaged in unwelcome conduct against Ms. Eller due to her gender identity and sex.

68.     In spite of the fact that Ms. Eller clearly identified as a woman, and began at Friendly High School following her transition, members of the administration and staff routinely misgendered her.

69.     On February, 13, 2015, for instance, during technology training in the presence of an outside company representative, Ms. Paula Robinson, an Associate Principal, continuously referred to Ms. Eller as "sir" and "mister." Ms. Robinson misgendered Ms. Eller enough times that the company representative also began referring to Ms. Eller as male. After multiple corrections by Ms. Eller, Ms. Robinson eventually replied, "oh."

70.     Following the technology training, Ms. Robinson attempted to excuse her behavior by asking Ms. Eller to be patient because Ms. Robinson "was having trouble adjusting" to Ms. Eller's transition. Ms. Eller had transitioned before beginning her tenure at Friendly High School, and Ms. Robinson, who began working at Friendly High School several years *after* Ms. Eller, has only known Ms. Eller as a woman.

71.     In response to Ms. Robinson's misgendering, Ms. Eller filed an Incident Report on February 20, 2015, through Defendants' internal grievances process.

72.     In spite of the fact that no one at Friendly High School had ever known Ms. Eller before her transition, Ms. Robinson was not the only person to misgender her.

73.     On August 18, 2015, Ms. Redmond referred to Ms. Eller as "sir," during a different training session.

74.     On October 2, 2015, Mr. James, co-leader of professional development at Northwestern High School, also referred to Ms. Eller as "sir."

75.     Significantly, it took Defendants approximately three years to update Ms. Eller's email address to reflect her new name.  As a result, Defendants repeatedly revealed Ms. Eller's transgender status to parents and students who corresponded with her by email or searched for her contact information. And as of the date of this Amended Complaint, even after the EEOC determination finding reasonable cause to believe that Ms. Eller was subjected to harassment, discrimination, and retaliation, Defendants' publicly accessible employee directory still lists Ms. Eller by her male birth name.

76.     Parents also victimized Ms. Eller.

77.     In August 2012, at a new student orientation, a parent entered Ms. Eller's classroom and immediately left, stating that she was offended by a "pervert" teaching her child, and that Ms. Eller should be fired.

78.     In March 2013, a parent called Ms. Eller to express that she was upset about her child's first quarter grades, even though the call took place during the third quarter of school. During the call, the parent yelled at Ms. Eller, used incorrect pronouns despite Ms. Eller correcting her twice, and accused Ms. Eller of lying to everyone about "being a woman." The parent then threatened to take her complaints about the "lying, pedophile, tranny" to the school board. At a later point, the same parent came to the school, yelled at Ms. Eller and had to be removed by security.

79.     Further, during parent-teacher conferences parents often misgendered Ms. Eller, referring to her as "Mister," "he," or "him" without any correction from the present administration official. Without any support in that environment, Ms. Eller felt unsafe correcting the parents, and the misgendering persisted.

80.     In one instance, during a phone conversation on or about March 17, 2015, a parent began to demean Ms. Eller based on her gender identity. Specifically, the parent continuously referred to Ms. Eller as "Mister" and Sir" throughout the call. Moreover, the parent suggested that Ms. Eller was not a good teacher because she was "confused" about her gender identity.

**C.     Defendants Ignored Ms. Eller's Attempts to Remedy the Discrimination**

81.     Ms. Eller constantly reported acts of harassment and discrimination to Friendly High School's administration, imploring it to help end the hostile work environment and institute transgender awareness training for students, staff, and administration. Additionally, Ms. Eller

repeatedly asked the administration for introductory materials on transgender identities for the staff and student libraries.

82.     In fact, even the internal grievance process that Ms. Eller's Incident Report initiated resulted in a recommendation (1) that Ms. Robinson receive counseling and (2) that Friendly High School's students and staff receive diversity and sensitivity training.

83.     However, notwithstanding Friendly High School's mission, stated on its website, to "foster a community of caring individuals," the school administration willfully ignored the culture of discrimination and harassment that was being created, and failed to implement appropriate measures to address—let alone eradicate—the severely hostile work environment to which Ms. Eller was subjected.

84.     The administration's only attempt at training related to transgender inclusion occurred on or around March 17, 2015, the day in which a parent verbally attacked Ms. Eller over the phone. However, this half-hearted attempt at training left much to be desired. The purported "training" was truncated, ineffective, and only included part of the school community (specifically staff, not students).

85.     On the day of the "training," Ms. Pope-Brown permitted Ms. Eller to take her end-of-day planning period at home. Unbeknownst to Ms. Eller, the administration had requested that Major Irene Burks of the Prince George's County Police Department conduct training during that afternoon's monthly staff meeting, despite the fact that Ms. Eller had left for the day.

86.     Defendants gave Major Burks little warning for advance preparation, and Mr. Adams abruptly terminated the training when a teacher became confrontational about the validity of transgender identity and the proper treatment of transgender persons. Defendants never rescheduled the training.

87.     Ms. Eller learned about the meeting the following day, when she was given a sealed envelope addressed to her by Major Burks. The letter inside the envelope asked Ms. Eller to contact Major Burks at her earliest convenience. When Ms. Eller contacted Major Burks, the latter confirmed that a training had occurred but had been cut short. Major Burks also confided in Ms. Eller that she believed that the administration had not manifested sufficient support for the training.

88.     Ms. Eller's proactive and repeated attempts to remedy the harassment from which she was suffering fell on deaf ears. As a result, this discriminatory treatment continued during her tenure at Friendly High School. The administration failed to take any meaningful action in response to the pervasive attacks. When the administration did take action, it was arbitrary and only disciplinary in nature, and on an individual basis. As Ms. Eller continuously reminded the administration, no reasonable person could expect Defendants' very-limited actions to address the systemic problem they had created: a culture of discrimination and harassment towards transgender individuals. But in spite of Ms. Eller's continued pleas, the administration never implemented school-wide diversity and inclusion training, including on the topic of transgender issues, for the students, staff, and administration; nor had Defendants taken any other meaningful actions to rectify the injury to Ms. Eller.

89.     As a result, the attacks against Ms. Eller due to her sex and gender identity continued during the remainder of her tenure at Friendly High School.

**D.     Defendants Retaliate Against Ms. Eller**

90.     In response to Ms. Robinson's misgendering during the February 13, 2015 technology training, Ms. Eller filed an Incident Report on February 20, 2015, through

Defendants' internal grievances process. As a result, the administration continued its discrimination and took adverse employment actions against Ms. Eller.

91.     Soon after Ms. Eller filed her incident report, for example, the administration began asking other teachers about replacing Ms. Eller as the Advanced Placement English teacher, without informing her.

92.     Additionally, in or around May 2015, Officer Roderick Kendrick singled out Ms. Eller for having a privacy screen over her door window. The policy is ostensibly in place to protect children from abuse by teachers. However, many other teachers would often place a privacy screen over their door windows to signal their unavailability to meet with students. Staff understood the widespread practice of using a privacy screen to signal that a teacher was unavailable. To the best of Ms. Eller's knowledge, she was the only teacher reprimanded for the use of a privacy screen.

93.     On June 3, 2015, Ms. Eller also filed a Discrimination Charge with the EEOC, reporting the myriad of acts of harassment and discrimination from which she had suffered. Throughout the EEOC investigation, Ms. Eller updated the Discrimination Charge with new instances of victimization.

94.     On June 8, 2015, just five days after she filed the Discrimination Charge, Ms. Eller's *students* informed her that she was being removed from teaching her Advanced Placement English classes. When she confronted Mr. Adams about the news, he claimed that no decision had been made.

95.     On June 11, 2015, Ms. Eller was called into Mr. Adams's office during a lesson. Upon arriving, she found Mr. Adams and Mr. Thompson waiting for her. Mr. Adams informed Ms. Eller that he was removing her from teaching Advanced Placement English, in part, because

she was "too popular" with the students and their education had been suffering as a result. During a moment in which Mr. Adams had stepped out of his office, Mr. Thompson confided in Ms. Eller that she was a good teacher and that the removal had nothing to do with her teaching.

96.     Further, after Ms. Eller's Incident Report and Discrimination Charge filings, members of the administration and staff began raising exaggerated accusations against Ms. Eller that were at odds with her demonstrated character during her tenure at the high school.

97.     These allegations eventually resulted in a disciplinary hearing in April of 2016, during which Mr. Adams accused Ms. Eller of, among other things, having thrown a pen at a student, failing to properly teach her classes, shouting at students, and causing students to fear for their safety. The disciplinary committee did not sanction Ms. Eller.

98.     After the hearing, Ms. Eller decided to take unpaid leave pursuant to the Family and Medical Leave Act ("FMLA"). While retrieving the FMLA leave paperwork from Ms. Dee Jones-Harris, Mr. Adams's Administrative Assistant, Ms. Jones-Harris told Ms. Eller that it might be better if she transferred to a school where nobody knew her.

99.     Instead of taking leave, however, Ms. Eller decided to request a transfer to another school.  After much difficulty in getting Defendants to even address the subject of a transfer before the start of the new school year, Defendants eventually transferred Ms. Eller to James Madison Middle School on August 21, 2016. Defendants told Ms. Eller that she was being transferred just days before the first day of class; thus, making her curriculum preparation nearly impossible.

100.    Within weeks, Ms. Eller began receiving similar treatment from students at her new school.  For example, students would continuously refer to her as "Mister" and "Sir."

101.     On September 13, 2016, while picking up her class from the cafeteria after lunch, a student from another class shouted, at full volume, "It's a man! It's really a man!"

102.     On September 27, 2016, after dropping off her class at the cafeteria for lunch, a student screamed "MISTER Eller," at Ms. Eller.

103.     On October 4, 2016, during a review, Ms. Eller asked the class for an example of the use of the word "sham." One student respondent, "Cailyn Jenning's [a reference to Caitlyn Jenner, a transgender woman] body is a sham." The classroom then erupted in laughter.

104.     When Ms. Eller approached Mr. Ronald Connelin, an Assistant Principal, to address the situation at the school, he responded that she should be less sensitive on the matter, that she should not advocate for any LGBTQ issues on campus, and that she should also ignore any teachers or staff who expressed disapproval of transgender people. Ms. Courtney King, the Principal, agreed to implement diversity training, but the administration prevented any training from occurring.

105.     On October 6, 2016, a student who had continuously and aggressively misgendered Ms. Eller, told Ms. Eller that he could take out his anger on her if he wanted to do so.

106.     Following years of discrimination and harassment coupled with Defendants' willful inattention to the hostile work environment at their schools, Ms. Eller reached her breaking point. Defendants' belated transfer of Ms. Eller from one hostile work environment to another hostile work environment did nothing to remedy her situation; rather it perpetuated the discrimination and abuse.

107.     Compelled to protect her health, Ms. Eller was forced to take a leave of absence on October 7, 2016.

108.    Ms. Eller immediately checked into an out-patient psychiatric program at Georgetown University Hospital, where she was diagnosed with post-traumatic stress disorder from the abuse, discrimination, and retaliation she experienced as an employee of Defendants.

109.    Ms. Eller was able to maintain her leave of absence until spring of 2017.

110.    However, concluding that she would not survive the strain of returning to her prior intolerable working conditions, Ms. Eller was forced to resign on August 18, 2017.

**E.      The Harm Inflicted on Ms. Eller**

111.    After being forced to take a leave of absence and resign, Ms. Eller, a teacher by profession, took a job at Target to support herself, earning approximately 20% of her prior salary.

112.    The discriminatory conditions and retaliatory actions of her work environment have caused Ms. Eller substantial pain and suffering. To treat the emotional trauma directly related to her employment environment, Ms. Eller has had to attend psychiatric counseling and outpatient psychiatric hospitalization for PTSD, incurring significant costs in doing so. Further, Ms. Eller has also incurred significant expenses related to physical ailments, including chronic back pain and weight gain, both of which were caused or exacerbated by the stress of the hostile work environment and retaliation.

113.    Defendants' non-transgender employees are not subjected to a hostile work environment wherein incidents of discrimination, harassment, and assault by students, staff, parents, and members of the administration routinely and continually go unaddressed.  As such, Defendants improperly denies equal terms, conditions, and privileges of employment to transgender employees, like Ms. Eller, and violated Ms. Eller's civil rights to be free from discrimination.

114.     As a result of the discriminatory actions and practices by Defendants described above, Ms. Eller has suffered injury and damages, including, *inter alia*, financial damages (such as lost income), emotional distress, humiliation, embarrassment, pain and suffering, stigmatization, and a loss of dignity.

115.     Thankfully, Ms. Eller eventually secured employment in March 2017 at the United States Navy's Child & Youth Programs (the "Navy CYP") as a youth counselor. During the weekdays, Ms. Eller works with children aged five to twelve, serving breakfast in the mornings and tutoring them during the afternoon. On the weekends, she works at the Navy CYP's outdoor recreational program with children aged nine to eighteen. She has also launched a Boys and Girls Club called the "Torch Club." Nevertheless, Ms. Eller's income is substantially less than her salary as Defendants' employee.

116.     Ms. Eller is treated with respect and as an equal at the Navy CYP.

117.     Today, Ms. Eller continues rebuilding her life.

## <u>CLAIMS FOR RELIEF</u>

### COUNT I – DEPRIVATION OF EQUAL PROTECTION
### IN VIOLATION OF THE FOURTEENTH AMENDMENT
### (Hostile Work Environment)
### (Against Defendant Monica Goldson)

118.     Ms. Eller realleges, adopts, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

119.     The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV, § 1.

120.     Defendant Goldson, in her official capacity as the Chief Executive Officer of a governmental entity, is subject to the equal protection guarantee.

121.     Under the Equal Protection Clause of the Fourteenth Amendment, discrimination based on sex—including gender identity, gender transition, transgender status, and nonconformity with sex stereotypes—is presumptively unconstitutional and subject to heightened scrutiny.

122.     Discrimination because a person is transgender is both discrimination based on sex, which requires courts to apply intermediate scrutiny when evaluating the constitutionality of the government's discrimination, and discrimination based on transgender status, which requires courts to apply strict or heightened scrutiny to such discrimination.

123.     Discrimination by government officials against transgender people because of their transgender status bears the indicia of a suspect classification requiring heightened scrutiny by the courts.

a.   Transgender people have suffered a long history of extreme discrimination and continue to suffer such discrimination to this day.

b.   Transgender people are a discrete and insular group and lack the political power to protect their rights through the legislative process. Transgender people have largely been unable to secure explicit local, state, and federal protections to protect them against discrimination, and have been and continue to be regularly targeted for discrimination by legislation, regulations, and other government action.

c.   A person's gender identity or transgender status bears no relation to a person's ability to contribute to society.

d.   Gender identity is a core, defining trait and is so fundamental to one's identity and conscience that a person cannot be required to abandon it as a condition of equal treatment.  Gender identity generally is fixed at an early age and highly resistant to change.

124.     While employed as a teacher at Prince George's County Public Schools, by Defendant Goldson in her official capacity, Ms. Eller was harassed, with impunity, by members of the school community, including students, staff, parents, and administration, directing derogatory comments toward, and in some instances physically assaulting, Ms. Eller because of her sex.

125.     In addition, Ms. Eller was continuously misgendered by students, staff, parents, and administration.

126.     The harassment Ms. Eller endured was unwelcome. Indeed, Ms. Eller repeatedly asked the perpetrators to correct their behavior and reported incidents of harassment to the administration at Friendly High School, to no avail.

127.     The harassment Ms. Eller endured was sufficiently severe or pervasive as to alter the terms, conditions, and privileges of her employment, and to create an abusive, intimidating, humiliating, hostile, offensive working environment for Ms. Eller.

128.     The persistent discrimination, harassment, and hostile work environment that Ms. Eller endured was so severe or pervasive that it led to her constructive termination by forcing her to resign her employment as a teacher at Prince George's County Public Schools.

129.     Defendant Goldson willfully ignored or was recklessly indifferent to the discrimination, harassment, and hostile work environment to which Ms. Eller was subjected.

130.    Defendant Goldson had actual and constructive knowledge of the hostile work environment from which Ms. Eller was suffering and did not take appropriate remedial action.

131.    Moreover, in some instances, supervisors and administrators, who had the ability to take tangible action against Ms. Eller, perpetrated the discriminatory behavior.

132.    As a result, Defendant Goldson discriminated against Ms. Eller with regard to her terms, conditions, or privileges of Ms. Eller's employment because of her sex and transgender status.

133.    Upon information and belief, non-transgender employees at Prince George's County Public Schools are not subjected to the discrimination, harassment, and hostile work environment to which transgender employees, like Ms. Eller, are subjected, nor are non-transgender employees routinely misgendered by students, staff, parents, and administration.

134.    Upon information and belief, incidents of assault and harassment towards non-transgender teachers by students are not left unaddressed by Defendant Goldson.

135.    Defendant Goldson deprived Ms. Eller of rights, remedies, privileges, and immunities guaranteed to every person, secured by 42 U.S.C. § 1983, including, but not limited to, the right guaranteed by the Fourteenth Amendment to the Constitution of the United States to the equal protection of the laws.

136.    Defendant Goldson's officers and school administrators, including Mr. Adams, Mr. Thompson, Ms. Robinson, Mr. Connellin, and Ms. King, acted under pretense and color of state law and within the scope of their employment.

137.    Ms. Eller, as a public school teacher, enjoyed a constitutionally-protected right, to be free from sex-based discrimination and mistreatment because of her gender identity, gender transition, transgender status, and nonconformity with sex stereotypes.

138.     Accordingly, Defendant Goldson is liable for the violation of Ms. Eller's Fourteenth Amendment rights under 42 U.S.C. § 1983, and Ms. Eller is entitled to declaratory and injunctive relief against her.

### COUNT II – DISCRIMINATION BECAUSE OF SEX
### IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT
### (Hostile Work Environment)
### (Against County Defendants)

139.     Ms. Eller realleges, adopts, and incorporates by reference the allegations in paragraphs 1 through 117 above, as if fully set forth herein.

140.     Title VII of the Civil Rights Act of 1964 provides that employers may not "discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's . . . sex." 42. U.S.C. § 2000e-2(a)(1).

141.     Discrimination on the basis of transgender status, gender identity, gender transition, or nonconformity with sex stereotypes are all encompassed by the prohibition on discrimination on the basis of "sex" under Title VII.

142.     Ms. Eller has a right under Title VII to compensation, terms, conditions, or privileges of employment, including a non-hostile work environment, free from discrimination or harassment because of her sex, nonconformity with sex stereotypes, gender identity, gender transition, or transgender status.

143.     While employed as a teacher at Prince George's County Public Schools, Ms. Eller was harassed, with impunity, by members of the school community, including students, staff, parents, and administration, by directing derogatory comments toward, and in some instances physically assaulting, Ms. Eller because of her sex.

144.    In addition, Ms. Eller was continuously misgendered by students, staff, parents, and administration. The EEOC has found that persistent failure to use the employee's correct name and pronoun may constitute unlawful, sex-based harassment.

145.    The harassment Ms. Eller endured was unwelcome. Indeed, Ms. Eller repeatedly asked the perpetrators to correct their behavior and repeatedly reported incidents of harassment to the administration at Friendly High School to no avail.

146.    This harassment was sufficiently severe or pervasive as to alter the terms, conditions, and privileges of Ms. Eller's employment, and to create an abusive, intimidating, humiliating, hostile, offensive working environment for Ms. Eller.

147.    The persistent discrimination, harassment, and hostile work environment that Ms. Eller endured was so severe or pervasive that it led to her constructive termination by forcing her to resign her employment as a teacher at Prince George's County Public Schools.

148.    County Defendants willfully ignored or were recklessly indifferent to the discrimination, harassment, and hostile work environment to which Ms. Eller was subjected.

149.    County Defendants had actual and constructive knowledge of the hostile work environment from which Ms. Eller was suffering and did not take appropriate remedial action.

150.    Moreover, in some instances, Friendly High School supervisors, who had the ability to take tangible action against Ms. Eller, perpetrated the discriminatory behavior.

151.    As a result, County Defendants discriminated against Ms. Eller with regard to her terms, conditions, or privileges of Ms. Eller's employment because of her sex.

152.    Accordingly, County Defendants have violated Ms. Eller's rights protected by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) and (2).

**COUNT III – DISCRIMINATION ON THE BASIS OF SEX**
**IN VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972**
**(Hostile Work Environment)**
**(Against County Defendants)**

153.     Ms. Eller realleges, adopts, and incorporates by reference in paragraphs 1 through 117 above, as if fully set forth herein.

154.     Title IX provides that "[n]o person in the United States shall, on the basis of sex, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance." 20 U.S.C. § 1681(a).

155.     In addition, pursuant to Title IX, "[n]o person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination in employment, or recruitment, consideration, or selection therefor, whether full-time or part-time, under any education program or activity operated by a recipient which receives Federal financial assistance." 34 C.F.R. § 106.51(a)(1).

156.     Discrimination on the basis of transgender status, gender identity, gender transition, or nonconformity with sex stereotypes are all encompassed by the prohibition on discrimination on the basis of "sex" under Title IX.

157.     Upon information and belief, County Defendants are an educational institution that receives federal financial assistance for their educational activities, and were therefore covered under Title IX

158.     Ms. Eller has a right under Title IX to compensation, terms, conditions, or privileges of employment, including a non-hostile work environment, free from discrimination or harassment based on her sex, nonconformity with sex stereotypes, gender identity, gender transition, or transgender status.

159.     While employed as a teacher at Prince George's County Public Schools, Ms. Eller was harassed, with impunity, by members of the school community, including students, staff, parents, and administration, by directing derogatory comments toward, and in some instances physically assaulting, Ms. Eller on the basis of her sex.

160.     In addition, Ms. Eller was continuously misgendered by students, staff, parents, and administration.

161.     The harassment Ms. Eller endured was unwelcome. Indeed, Ms. Eller repeatedly asked the perpetrators to correct their behavior and repeatedly reported incidents of harassment to school administrators to no avail.

162.     This harassment was sufficiently severe or pervasive as to alter the terms, conditions, and privileges of Ms. Eller's employment, and to create an abusive, intimidating, humiliating, hostile, offensive working environment for Ms. Eller.

163.     The persistent discrimination, harassment, and hostile work environment that Ms. Eller endured was so severe or pervasive that it led to her constructive termination by forcing her to resign her employment as a teacher at Prince George's County Public Schools.

164.     County Defendants deliberately ignored or were recklessly indifferent to the discrimination, harassment, and hostile work environment to which Ms. Eller was subjected.

165.     County Defendants had actual and constructive knowledge of the hostile work environment from which Ms. Eller was suffering and did not take appropriate remedial action.

166.     Moreover, in some instances, school supervisors, who had the ability to take tangible action against Ms. Eller, perpetrated the discriminatory behavior.

167.     As a result, County Defendants discriminated against Ms. Eller with regard to her terms, conditions, or privileges of Ms. Eller's employment because of her sex.

168.     Accordingly, County Defendants have violated Ms. Eller's rights protected by Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681.

**COUNT IV – DISCRIMINATION BECAUSE OF SEX AND GENDER IDENTITY IN VIOLATION OF THE MARYLAND FEPA**
**(Hostile Work Environment)**
**(Against County Defendants)**

169.     Ms. Eller realleges, adopts, and incorporates by in paragraphs 1 through 117 above, as if fully set forth herein.

170.     The Maryland FEPA, § 20–606(a)(1)(i), provides that employers may not "discriminate against any individual with respect to the individual's compensation, terms, conditions, or privileges of employment because of . . . sex . . . [or] gender identity." Md. Code Ann., State Gov't § 20-606.

171.     Discrimination on the basis of transgender status, gender transition, or nonconformity with sex stereotypes are all encompassed by the prohibition on discrimination on the basis of "sex" and "gender identity" under the Maryland FEPA.

172.     Ms. Eller has a right under the Maryland FEPA to compensation, terms, conditions, or privileges of employment, including a non-hostile work environment, free from discrimination or harassment because of her sex, nonconformity with sex stereotypes, gender identity, gender transition, or transgender status.

173.     While employed as a teacher at Prince George's County Public Schools, Ms. Eller was harassed, with impunity, by members of the school community, including students, staff, parents, and administration, by directing derogatory comments toward, and in some instances physically assaulting, Ms. Eller because of her sex and gender identity.

174.    In addition, Ms. Eller was continuously misgendered by students, staff, parents, and administration. The EEOC has found that persistent failure to use the employee's correct name and pronoun may constitute unlawful, sex and gender identity-based harassment.

175.    The harassment Ms. Eller endured was unwelcome. Indeed, Ms. Eller repeatedly asked the perpetrators to correct their behavior and repeatedly reported incidents of harassment to the administration at Friendly High School to no avail.

176.    This harassment was sufficiently severe or pervasive as to alter the terms, conditions, and privileges of Ms. Eller's employment, and to create an abusive, intimidating, humiliating, hostile, offensive working environment for Ms. Eller.

177.    The persistent discrimination, harassment, and hostile work environment that Ms. Eller endured was so severe or pervasive that it led to her constructive termination by forcing her to resign her employment as a teacher at Prince George's County Public Schools.

178.    County Defendants willfully ignored or were recklessly indifferent to the discrimination, harassment, and hostile work environment to which Ms. Eller was subjected.

179.    County Defendants had actual and constructive knowledge of the hostile work environment from which Ms. Eller was suffering and did not take appropriate remedial action.

180.    Moreover, in some instances, Friendly High School supervisors, who had the ability to take tangible action against Ms. Eller, perpetrated the discriminatory behavior.

181.    As a result, County Defendants discriminated against Ms. Eller with regard to her terms, conditions, or privileges of Ms. Eller's employment because of her sex and gender identity.

182.    Accordingly, County Defendants have violated Ms. Eller's rights protected by the Maryland FEPA, Md. Code Ann. State Gov't § 20–606(a)(1)(i).

**COUNT V – DISCRIMINATION BECAUSE OF SEX**
**IN VIOLATION OF PRINCE GEORGE'S COUNTY CODE**
**(Hostile Work Environment)**
**(Against County Defendants)**

183.     Ms. Eller realleges, adopts, and incorporates by reference in paragraphs 1 through

117 above, as if fully set forth herein.

184.     The County Code of Prince George's County, § 2-222, provides that employers

may not "act against any person with respect to compensation or other terms and conditions of

employment, or limit, segregate, classify, or assign employees because of discrimination." Prince

George's County, Md., Code, § 2-222.

185.     The County Code of Prince George's County, § 2-186(a)(3), defines

discrimination as, "shall mean acting, or failing to act, or unduly delaying any action regarding

any person because of . . . sex . . . in such a way that such person is adversely affected in  . . .

employment." Prince George's County, Md., Code, § 2-186(a)(3).

186.     Discrimination on the basis of transgender status, gender identity, gender

transition, or nonconformity with sex stereotypes are all encompassed by the prohibition on

discrimination on the basis of "sex" under §§ 2-186(a)(3) and 2-222 of the County Code of

Prince George's County.

187.     Ms. Eller has a right under §§ 2-186(a)(3) and 2-222 of the County Code of

Prince George's County to compensation, terms, conditions, or privileges of employment,

including a non-hostile work environment, free from discrimination or harassment because of her

sex, nonconformity with sex stereotypes, gender identity, gender transition, or transgender status.

188.     While employed as a teacher at Prince George's County Public Schools, Ms. Eller

was harassed, with impunity, by members of the school community, including students, staff,

parents, and administration, by directing derogatory comments toward, and in some instances physically assaulting, Ms. Eller because of her sex.

189.     In addition, Ms. Eller was continuously misgendered by students, staff, parents, and administration. The EEOC has found that persistent failure to use the employee's correct name and pronoun may constitute unlawful, sex-based harassment.

190.     The harassment Ms. Eller endured was unwelcome. Indeed, Ms. Eller repeatedly asked the perpetrators to correct their behavior and repeatedly reported incidents of harassment to the administration at Friendly High School to no avail.

191.     This harassment was sufficiently severe or pervasive as to alter the terms, conditions, and privileges of Ms. Eller's employment, and to create an abusive, intimidating, humiliating, hostile, offensive working environment for Ms. Eller.

192.     The persistent discrimination, harassment, and hostile work environment that Ms. Eller endured was so severe or pervasive that it led to her constructive termination by forcing her to resign her employment as a teacher at Prince George's County Public Schools.

193.     County Defendants willfully ignored or were recklessly indifferent to the discrimination, harassment, and hostile work environment to which Ms. Eller was subjected.

194.     County Defendants had actual and constructive knowledge of the hostile work environment from which Ms. Eller was suffering and did not take appropriate remedial action.

195.     Moreover, in some instances, Friendly High School supervisors, who had the ability to take tangible action against Ms. Eller, perpetrated the discriminatory behavior.

196.     As a result, County Defendants discriminated against Ms. Eller with regard to her terms, conditions, or privileges of Ms. Eller's employment because of her sex.

197.    Accordingly, County Defendants have violated Ms. Eller's rights protected by PG County Code, Division 12, §§ 2-186(a)(3) and 2-222.

## COUNT VI – DISCRIMINATION BECAUSE OF SEX
## IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT
### (Retaliation)
### (Against County Defendants)

198.    Ms. Eller realleges, adopts, and incorporates by reference in paragraphs 1 through 117 above, as if fully set forth herein.

199.    Ms. Eller opposed County Defendants' hostile work environment by filing an Incident Report through County Defendants' internal grievance process and a Discrimination Charge with the EEOC, both of which constitute protected activity.

200.    As a result of engaging in this protected activity, County Defendants took adverse employment action against Ms. Eller, including removing her from Advanced Placement classes, pursuing unwarranted disciplinary action, and making her working conditions so intolerable that she felt compelled to take a leave of absence and ultimately resign.

201.    County Defendants' employees with managerial and supervisory power over Ms. Eller took these adverse employment actions.

202.    As a result, County Defendants retaliated against Ms. Eller because she engaged in protected activity.

Accordingly, County Defendants have violated Ms. Eller's rights protected by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3.

**COUNT VII – DISCRIMINATION ON THE BASIS OF SEX
IN VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972
(Retaliation)
(Against County Defendants)**

203.    Ms. Eller realleges, adopts, and incorporates by reference in paragraphs 1 through

117 above, as if fully set forth herein.

204.    Upon information and belief, County Defendants are an educational institution

that received federal financial assistance for their educational activities, and were therefore

covered under Title IX.

205.    Because Congress enacted Title IX to prevent use of federal funding to support

discriminatory practices, reporting an incident of discrimination is integral to Title IX

enforcement. Accordingly, persons who complain about sex discrimination have protection

against retaliation.

206.    Title IX prohibits retaliation against individuals who engage in protected activity,

including voicing concerns to superiors at the educational institution and filing good faith

complaints of sex discrimination.

207.    Ms. Eller opposed County Defendants' discrimination by informing superiors at

the educational institution of the discrimination from which she was suffering, filing an Incident

Report through County Defendants' internal grievance process, and filing a Discrimination

Charge with the EEOC, all of which constitute protected activity.

208.    As a result of engaging in this protected activity, County Defendants deliberately

and intentionally took adverse employment action against Ms. Eller, including removing her

from Advanced Placement classes, pursuing unwarranted disciplinary action, and making her

working conditions so intolerable that she felt compelled to take a leave of absence and ultimately resign.

209.     County Defendants' employees with managerial and supervisory power over Ms. Eller took these adverse employment actions.

210.     As a result, County Defendants retaliated against Ms. Eller because she engaged in protected activity.

211.     Accordingly, County Defendants have violated Ms. Eller's rights protected by Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681.

## COUNT VIII – DISCRIMINATION BECAUSE OF SEX AND GENDER IDENTITY IN VIOLATION OF THE MARYLAND FEPA
### (Retaliation)
### (Against County Defendants)

212.     Ms. Eller realleges, adopts, and incorporates by reference in paragraphs 1 through 117 above, as if fully set forth herein.

213.     Ms. Eller opposed County Defendants' hostile work environment by filing an Incident Report through County Defendants' internal grievance process and a Discrimination Charge with the EEOC, both of which constitute protected activity.

214.     As a result of engaging in this protected activity, County Defendants took adverse employment action against Ms. Eller, including removing her from Advanced Placement classes, pursuing unwarranted disciplinary action, and making her working conditions so intolerable that she felt compelled to take a leave of absence and resign.

215.     County Defendants' employees with managerial and supervisory power over Ms. Eller took these adverse employment actions.

216.     As a result, County Defendants retaliated against Ms. Eller because she engaged in protected activity.

217.     Accordingly, County Defendants have violated Ms. Eller's rights protected by the Maryland FEPA, Md. Code Ann. State Gov't § 20–606(f).

### COUNT IX – DISCRIMINATION BECAUSE OF SEX
### IN VIOLATION OF PRINCE GEORGE'S COUNTY CODE
#### (Retaliation)
#### (Against County Defendants)

218.     Ms. Eller realleges, adopts, and incorporates by reference in paragraphs 1 through 117 above, as if fully set forth herein.

219.     Ms. Eller opposed County Defendants' hostile work environment by filing an Incident Report through County Defendants' internal grievance process and a Discrimination Charge with the EEOC, both of which constitute protected activity.

220.     As a result of engaging in this protected activity, County Defendants took adverse employment action against Ms. Eller, including removing her from Advanced Placement classes, pursuing unwarranted disciplinary action, and making her working conditions so intolerable that she felt compelled to take a leave of absence and resign.

221.     County Defendants' employees with managerial and supervisory power over Ms. Eller took these adverse employment actions.

222.     As a result, County Defendants retaliated against Ms. Eller because she engaged in protected activity.

223.     Accordingly, County Defendants have violated Ms. Eller's rights protected by Prince George's County, Md., Code, § 2-186(a)(3) and 2-222.

VI.     **PRAYER FOR RELIEF**

WHEREFORE, Ms. Eller respectfully requests that this Court enter Judgment in her

favor and against Defendants on all claims as follows:

1.      Enter a declaratory judgment that the actions of Defendants complained herein are

in violation Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*; Title IX of the

Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*; the Maryland Fair Employment

Practices Act, Md. Code Ann., State Gov't § 20-606, *et seq.*; the Prince George's County, Md.,

Code, §§ 2-186(a)(3), 2-222, *et seq.*; the Fourteenth Amendment of the United States

Constitution, U.S. Const. amend. XIV, § 1, enforceable through 42 U.S.C. § 1983; and 42 U.S.C.

§ 1981a;

2.      An award of appropriate back pay, lost benefits and prejudgment interest, in

amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of

the discrimination Plaintiff endured, including but not limited to reinstatement or front pay;

3.      An award of compensation for past and future pecuniary losses resulting from the

unlawful discrimination described above, including job search expenses, in amounts to be

determined at trial;

4.      An award of compensation for non-pecuniary losses resulting from the unlawful

employment practices described above, including inconvenience, emotional pain and suffering,

embarrassment, anxiety, stress, depression, humiliation, loss of enjoyment of life, and violation

of her dignity, in amounts to be determined at trial;

5.      Issue permanent injunctive relief ordering Defendants, their agents, employees,

successors, and all others acting in concert with Defendants, to refrain from discriminating on the

basis of sex, nonconformity with sex stereotypes, gender identity, gender transition, and

transgender status, in the provision of compensation, terms, conditions, or privileges of employment, and requiring Defendants to implement such training for students, staff, and administrators at Prince George's County Public Schools regarding the nondiscriminatory treatment of transgender and gender nonconforming persons;

6.      Award Ms. Eller punitive damages;

7.      Award Ms. Eller the costs and disbursements of this action, including reasonable attorneys' fees; and

8.      Grant such other and further relief in favor of Ms. Eller as this Court deems just, equitable and proper.

Dated: December 20, 2018.

Respectfully submitted,

___/s/ *Christina Brenha*___
Christina Brenha (20657)
Paul Pompeo*
Elliott Mogul*
ARNOLD & PORTER
    KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC  20001-3743
Telephone:  +1 202.942.5000
Fax:  +1 202.942.5999
Email: christina.brenha@arnoldporter.com
            paul.pompeo@arnoldporter.com
            elliott.mogul@arnoldporter.com

Omar Gonzalez-Pagan*
LAMBDA LEGAL DEFENSE AND
    EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 10005
Telephone: (212) 809-8585
Fax: (212) 809-0055
Email: ogonzalez-pagan@lambdalegal.org

Puneet Cheema*
LAMBDA LEGAL DEFENSE AND
   EDUCATION FUND, INC.
1776 K Street NW, Suite 722
Washington, DC 20006
Telephone: (202) 804-6245, ext. 596
Email: pcheema@lambdalegal.org

*Attorneys for Plaintiff*

* Applications for admission *pro hac vice*
forthcoming.