**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| JENNIFER ELLER<br><br>        Plaintiff,<br><br>   v.<br><br>PRINCE GEORGE'S COUNTY PUBLIC SCHOOLS, et al.,<br><br>        Defendants. | Case Number: 18-cv-03649<br><br>**PLAINTIFF JENNIFER ELLER'S OPPOSITION TO DEFENDANTS' MOTION FOR ORDER FOR MENTAL EXAMINATION AND MODIFICATION OF THE SCHEDULING ORDER** |

## INTRODUCTION

Plaintiff Jennifer Eller brings this action because the actions and indifference of Defendants caused her to suffer severe and pervasive harassment due to her sex, gender identity, and transgender status, violating her rights under the U.S. Constitution, federal and state law, and Prince George's County Code.  In support of her claims, Ms. Eller timely produced a report by Dr. Randi Ettner, a clinical and forensic psychologist, which detailed Dr. Ettner's evaluation of the emotional suffering and resulting trauma (specifically, a diagnosis of post-traumatic stress disorder ("PTSD")) that Ms. Eller experienced because of Defendants' actions and inaction. Now, Defendants belatedly move for this Court to order an independent medical examination ("IME") of Ms. Eller, pursuant to Federal Rule of Civil Procedure 35, so that they may attempt to counter Dr. Ettner's report, and to extend the discovery deadlines to allow enough time for that examination.  *See* ECF No. 39 ("Motion").

As a threshold matter, Defendants have failed to support their request for such an invasive examination, as they have not established the qualifications of their proposed examiner, the appropriateness of the many (and indeterminate) tests that they suggest, or that good cause

exists for the examination.  The need for such support is especially acute here, as even a well-intentioned examiner inexperienced in working with transgender patients or dealing with the trauma that bias based on gender identity might cause, could inadvertently inflict more psychological harm.  And, this concern of additional harm is elevated here where Defendants cannot even specify which of many examinations they might subject Ms. Eller to over the course of a proposed lengthy five-hour exam.  Indeed, the meagre amount of information Defendants provided in the filing disturbingly reflects their prior record of half-steps and unresponsiveness which caused Ms. Eller's trauma in the first place.

In addition, Defendants' Motion should be denied because the examination would otherwise be untimely and necessitate another extension of the pretrial deadlines.  Defendants failed to seek an extension of the deadline through the means provided by the District's Local Rules and Case Management Order ("CMO") (ECF No. 3), instead opting for the slower, notice-of-motion process that the CMO specifically notes is not to be used for motions to extend a deadline.  To be clear, the extension Defendants seek is a result of their own lack of diligence, which itself reflects the indifference with which Defendants have approached the discovery process in this case.  Defendants should not be permitted to benefit from their own delays.

Finally, Defendants' Motion is procedurally improper, failing to meet several of the District's Local Rules for such motions.  Most importantly, Defendants filed the Motion without any serious attempt to confer with Ms. Eller's counsel concerning the examination.  Defendants' one attempt to gain consent through a single email was devoid of almost all meaningful information concerning the proposed examination.

For these reasons, the Court should deny Defendants' request that it order Ms. Eller to be subject to a Rule 35 examination and for an extension of the discovery deadlines.

## ARGUMENT

**I.   Defendants Have Not Satisfied the Requirements of Rule 35 to Request an Examination of Ms. Eller.**

Rule 35 of the Federal Rules of Civil Procedure permits a court to "order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1).  Thus, a court may only order a party to submit to a Rule 35 examination conducted by a suitably licensed or certified examiner.  *See Crouch v. City of Hyattsville, Maryland*, No. CV DKC 09-2544, 2011 WL 13223820, at *2 (D. Md. Aug. 15, 2011).  While the moving party may propose an examiner to conduct the Rule 35 examination, it has "no absolute right to choose the examiner."  *See McKitis v. Defazio*, 187 F.R.D. 225, 227 (D. Md. 1999).  Instead, a court has the "responsibility to determine the suitability of the examiner's qualifications . . . even [for] a proposed examination by a physician":

> The court is thus expressly authorized to assess the credentials of the examiner assure that no person is subjected to a court-ordered examination by an examiner whose testimony would be of such limited value that it would be unjust to require the person to undergo the invasion of privacy associated with the examination.

Fed. R. Civ. P. 35 advisory committee's note to 1991 amendment.  A court order requiring a party to submit to a Rule 35 examination also "must specify the time, place, manner, conditions, and scope of the examination."  Fed. R. Civ. P. 35(a)(2)(B).

Moreover, a court may order a party to submit to a Rule 35 examination "only on motion for good cause."  Fed. R. Civ. P. 35(a)(2)(A).  This requirement is "not met by mere conclusory allegations of the pleadings—nor by mere relevance to the case—but require[s] an affirmative showing by the movant."  *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964).  Hence, Rule 35 "requires discriminating application by the trial judge, who must decide, as an initial matter in

every case, whether the party requesting a mental . . . examination . . . has adequately demonstrated the existence of . . . 'good cause.'" *Id.*; *see also Ricks v. Abbott Laboratories*, 198 F.R.D. 647, 648 (D. Md. 2001) (denying Rule 35 motion).

In their Motion, Defendants have failed to meet this standard. *First*, Defendants have failed to provide any information enabling the Court to determine whether their proposed examiner, Dr. Marcellus R. Cephas, is suitably qualified. *Second*, Defendants have provided no information enabling the Court to determine if their proposal to conduct up to seven vague psychological tests, touching on all aspects of Ms. Eller's life, over a four to five-hour long examination is appropriate or proportional to the needs of the case. *Third*, Defendants have not even attempted to satisfy the requirement of demonstrating that good cause exists for the examination that they propose.

### A.    Defendants Have Provided Insufficient Information to Establish That Dr. Cephas Is Suitably Qualified to Examine Ms. Eller.

The Court has the responsibility to ensure that Dr. Cephas is properly qualified to conduct a Rule 35 examination of Ms. Eller. *See* Fed. R. Civ. P. 35 advisory committee's note to 1991 amendment. However, the only qualifications noted by Defendants is that Dr. Cephas is an "M.D., MBA," and is "a board certified psychiatrist." Motion ¶ 5. Defendants do not even provide a curriculum vitae for Dr. Cephas for the Court to consider.

As a threshold matter, Dr. Cephas's MBA is irrelevant to the proposed examination. Although Defendants state that Dr. Cephas is a board certified psychiatrist, *id.*, they do not identify his specialty nor provide any information about his practice, expertise, or past experience treating or evaluating transgender individuals or individuals with PTSD or other similar emotional trauma.

4

Moreover, Defendants inform the Court that Dr. Cephas may subject Ms. Eller to up to seven different psychological tests, *id.* ¶¶ 7-8, but they omit any information supporting that Dr. Cephas is qualified to administer any of them.  Psychiatrists (such as Dr. Cephas) are medical doctors that are "able to conduct psychotherapy and prescribe medications and other medical treatments."  *What Is Psychiatry?*, Am. Psychiatric Ass'n, https://www.psychiatry.org/patients-families/what-is-psychiatry.  In contrast, psychologists "treat mental disorders with psychotherapy and some *specialize in psychological testing and evaluation*."  *Id.* (emphasis added).

Due to the different focus of the professions, there is substantial debate about whether forensic psychiatrists should be conducting psychological testing at all.  *See generally* Frank M. Dattillio, et al., *Should forensic psychiatrists conduct psychological testing?*, 39 J. of Psychiatry & Law 477 (Fall 2011).  That is because while "[t]he appropriate selection, administration, scoring, and interpretation of psychological tests require extensive training and supervision," *id.* at 489, "few psychiatrists are actually educated about the nature and properties of psychological testing and its contribution to diagnosis."  *Id.* at 483.  Instead, "[p]roper testing in forensic cases calls for a thorough grounding in test construction and assessment procedures as well as a firm knowledge of instrumental reliability and validity."  *Id.* at 489.  Defendants fail to provide any information about Dr. Cephas's qualifications to administer any of the seven proposed tests. This Court should not allow Defendants to submit Ms. Eller to such extensive psychological testing without any information supporting that Dr. Cephas is qualified to administer psycho-diagnostic tests.[1]

---

[1]      Should the Court be inclined to permit Defendants' requested examination of Ms. Eller to proceed, she requests that the examiner provide the raw data obtained during the examination to her designated expert, Dr. Ettner, in order to provide Dr. Ettner, a clinical and forensic

Of additional great concern in this case is Dr. Cephas's capacity to examine Ms. Eller without exacerbating the trauma she has already experienced at the hands of Defendants. Ms. Eller has suffered severe emotional trauma due to bias and harassment on account of her sex and transgender status, as well as Defendants' lack of sensitivity to ensuring that she be fairly treated by students and their employees. Thus, to be both suitably qualified and to minimize greater injury, any person who examines Ms. Eller should have experience treating transgender individuals, in accordance with the guidelines established by the American Psychological Association,[2] and more specifically, expertise in assessing both (i) Post-Traumatic Stress Disorder, Generalized Anxiety Disorder, and Depressive Disorder, and (ii) the effects of these conditions on transgender individuals. For this reason, Ms. Eller designated an expert, Dr. Randi Ettner, who meets such qualifications to support her claim of emotional injury.

Defendants have not provided any information for the Court to make the determination whether Dr. Cephas is qualified; and, based on Defendants' prior treatment of Ms. Eller, Ms. Eller requests that the Court not take it for granted that they have had these sensitive issues in mind.

Due to this marked lack of information, the Court cannot determine whether Dr. Cephas is suitably qualified to examine Ms. Eller. Defendants' motion fails for this reason alone.

---

psychologist, a fair opportunity to rebut any conclusions or opinions Defendants' expert provides.

[2]     Should the Court be inclined to permit Defendants' requested examination of Ms. Eller to proceed, she requests that the Court instruct that such examination be conducted in a "trans-affirmative" manner, respecting Ms. Eller's gender identity through the use of female pronouns. *See* Am. Psychological Ass'n, *Guidelines for Psychological Practice With Transgender and Gender Nonconforming People*, 70 AMERICAN PSYCHOLOGIST 832, 837 (2015), https://www.apa.org/practice/guidelines/transgender.pdf ("Services that psychologists provide to TGNC people require a basic understanding of the population and its needs, as well as the ability to respectfully interact in a trans-affirmative manner.").

**B.      Defendants Have Provided Insufficient Information to Establish that the Proposed Methodology and Length of the Examination Are Appropriate.**

Any order requiring Ms. Eller to submit to a Rule 35 examination "must specify the . . . manner, conditions, and scope of the examination."  Fed. R. Civ. P. 35(a)(2)(B).  But Defendants have only briefly described the nature of the examination, suggesting merely that it may involve up to seven psychological tests that examine, vaguely, all of Ms. Eller's "personal history and experiences," suggesting that nothing is off-limits.  Motion ¶ 7.  Defendants further assert that this sweeping examination may take as long as five hours.  *Id.* ¶ 9.  But Defendants have provided the Court with no information that would enable it to determine whether the proposed parameters are appropriate.

The only condition that Ms. Eller has placed "in controversy" for the purposes of a Rule 35 examination is the trauma (and attendant PTSD diagnosis) she has suffered as a result of Defendants' discriminatory activity and inaction that led to both a hostile work environment and retaliation.  Defendants' Motion, however, suggests that the scope of Dr. Cephas's examination could be far broader, including Ms. Eller's past history before or after her employment by Defendants, and her physical medical history beyond her psychiatric history.[3]  Motion ¶ 7. Under these parameters, Dr. Cephas might pose inappropriate questions that can exacerbate Ms. Eller's trauma or delve into irrelevant topics.  Indeed, several of the psychological tests Defendants propose have limited, if any, relevance to the trauma suffered by Ms. Eller.

Of particular concern is Defendants' proposal to have Dr. Cephas administer the Minnesota Multiphasic Personality Inventory ("MMPI"), a personality inventory consisting of hundreds of true or false questions that is typically used to assess an individual's *personality*.

---

[3]      Ms. Eller presumes Defendants mean to suggest an examination of her physical health history, as Defendants list "medical history" separately from "psychiatric history."  Mot. ¶ 7.

*See* Minnesota Multiphasic Personality Inventory (MMPI), Am. Psychological Ass'n, *APA Dictionary of Psychology*, https://dictionary.apa.org/minnesota-multiphasic-personality-inventory.  The MMPI broadly surveys an individual's personality and core characteristics by examining nearly all aspects of their past and present.  It is not a diagnostic tool for *evaluating trauma*, and thus is of little use in recognizing trauma, or determining the cause and extent of such trauma, the relevant questions here.  There are three different versions of the MMPI, which, among other things, vary in length.  *Id.*  The MMPI-2, for example, features 567 true–false questions, whereas the more modern MMPI–2–RF (Restructured Form) features 338 true–false questions.  *Id.*  Defendants fail to specify which version of the MMPI Dr. Cephas intends to administer.  In short, the MMPI is not only a heavy burden to place upon Ms. Eller, it is likely to ultimately be of limited to no use in addressing questions relevant to this case.

The Defendants also intend to have Dr. Cephas conduct the Mini-Mental State Examination ("MMSE") and the Mental Status Examination ("MSE").  These tests are duplicative of each other, and have limited relevance to the facts of this case.  Both the MMSE and the MSE assess the cognitive function or impairment of a subject.  *See* David R. Norris, *The Mental Status Examination*, Am. Family Physician 94(8):635-641 (2016), https://www.aafp.org/afp/2016/1015/p635.pdf.  Within the mental health community they are typically administered where there are concerns over memory loss or other basic cognitive issues.  These tests are highly unlikely to provide any information relevant to the trauma suffered by Ms. Eller.

Separately, Defendants have provided no reason justifying the need for a five-hour long examination if such examination were in fact limited to assessing Ms. Eller's trauma resulting from Defendants' actions.  Dr. Ettner's examination, covering all relevant subjects to Ms. Eller's emotional injury, was limited to three and a half hours.

In sum, Defendants have provided insufficient information for the Court to evaluate whether the scope, methodology, and length of the proposed examination are appropriate. For this additional independent reason, Defendants' Motion also fails.

### C.     Defendants Have Not Met Their Burden to Affirmatively Show Good Cause for Such an Invasive Examination.

Defendants must support their request with an affirmative showing of "good cause," as a Rule 35 examination is an invasive procedure which is not always necessary, even when relevant, in light of other, less-burdensome discovery tools. *Schlagenhauf*, 379 U.S. at 118. But, Defendants only mention "good cause" once, when quoting Rule 35, and thereafter ignore that requirement.

Ms. Eller does not deny that her emotional trauma resulting from Defendants' actions is in controversy; but that fact does not itself constitute good cause for an examination. *See Winstead v. Lafayette Cty. Bd. of Cty. Commissioners*, 315 F.R.D. 612, 616 (N.D. Fla. 2016); *see also Schlagenhauf*, 379 U.S. at 118 (confirming that the "good cause" requirement in both Rules 35 and 34 is "not a mere formality, but is a plainly expressed limitation on the use of" those Rules.). In *Winstead*, for example, two employees sued their employer under Title VII for gender discrimination, alleging mental injury. *See generally Winstead*, 315 F.R.D. 612. The Court rejected the defendants' argument that once the "in controversy" requirement had been met, the "good cause" requirement was also met. *Winstead*, 315 F.R.D. at 616. The defendants further argued that it would be unjust to allow plaintiffs' medical providers to testify without giving them the opportunity to investigate those injuries. *Id.* Nevertheless, the court held that the defendants had not established good cause because they could use other, less intrusive, discovery tools to test the claims for emotional injury, including examining plaintiffs' medical records and conducting depositions. *Id.*

As in *Winstead*, Ms. Eller is suing her former employer for gender discrimination and alleges that she has suffered emotional injury.  And as in *Winstead*, because Defendants are able to rely on less intrusive discovery tools to adequately develop their defenses, including by examination of Ms. Eller's psychiatric and medical records.  Defendants have not established good cause for an invasive Rule 35 examination, especially in light of the lack of information provided to the Court concerning Dr. Cephas or their proposed examination.  Thus, for this additional independent reason, Defendants' Motion fails.

## II.   Defendants' Lack of Diligence Should Not Be Rewarded With an Extension of Time.

Defendants' request to subject Ms. Eller to a Rule 35 examination is accompanied with a request to extend the current discovery schedule, and for good reason:  the proposed Rule 35 examination is a substitute for Defendants' Rule 26(a)(2) expert.  The deadline for Defendants' expert *disclosures* was September 3, thus any examination should have taken place sufficiently before September 3 to allow Defendants' expert to disclose his report by that date.  Even if Defendants' Rule 35 request were otherwise meritorious, Defendants' Motion should still be denied because this delay is a result of a characteristic lack of diligence by Defendants in this case, and any extension of time would reward their indifferent approach to this case.

It is clear that Defendants' proposed Rule 35 examination is a substitute for a Rule 26(a)(2) expert, and so any report from such an examination should comply with the deadline for that report.  Defendants cannot argue this point: they have labeled Dr. Cephas as "their expert," Motion ¶ 16, and specifically tied the need for an examination to respond to Dr. Ettner's report, Motion ¶ 5; *see also* Notice of Intent to File Motion ("Notice of Intent") (ECF 36), Ex. A ("[i]in light of Plaintiff's Expert Designation and Report…").  The appropriate time for Defendants to present a response to Plaintiff's expert report was the deadline for their own expert disclosures, a deadline which had already been extended by the Court to September 3.

The Rule 16 case management conference took place on April 1; accordingly, Defendants have had more than five months to prepare for expert discovery. The fact that Ms. Eller seeks damages for her emotional injuries is plainly stated in the Amended Complaint; as such, Defendants could and should have anticipated from the start of the case that this subject would be within the scope of discovery. To the extent that Defendants seem to suggest that it was only the disclosure of Dr. Ettner's expert report that alerted them to the need for their own expert, this is belied by Defendants' insistence that Ms. Eller's emotional injuries are plainly in controversy based on the face of the pleadings. *See, e.g.*, Motion ¶¶ 2, 13. They could have retained their expert and sought a Rule 35 examination anytime during those five months since April 1—more than sufficient time for their expert to prepare a report prior to their expert disclosure deadline.

There was no reasonable basis for Defendants to wait until August 15, a mere twelve business days before their expert disclosure deadline, to broach the subject of an examination with Ms. Eller. Even if Defendants' expert intends to specifically respond to Dr. Ettner's report, there was no need to delay *the examination* until after Ms. Eller produced that on August 5, much less any need for Defendants to begin the process of *scheduling* the examination until ten days after Ms. Eller disclosed Dr. Ettner's report.

Moreover, Defendants have exacerbated the delay in scheduling an examination by forcing motion practice to resolve this issue. As discussed further both above and below, Defendants did not provide Ms. Eller with sufficient information to evaluate whether she should consent to an examination without the need for contested motion practice. Their single email to Ms. Eller's counsel merely named Dr. Cephas without explaining his qualifications and demanded an examination without any discussion of its scope. When Ms. Eller's counsel responded that this information was insufficient, Defendants filed their Notice of Intent instead

of continuing discussions. Motion practice will further delay when any examination could take place. In short, had Defendants acted with diligence, they could have identified their desire to conduct a Rule 35 examination months ago, and potentially reached an agreement with Ms. Eller that would have avoided the present dispute.[4]

While not wanting to litigate other discovery issues in the context of this Motion, Ms. Eller notes that this pattern of delay and an insufficient attention to discovery obligations is a pattern for Defendants; this is not an isolated event. For example, Ms. Eller served requests for production of documents on Defendants on May 2. June 3, the deadline for a response, went by without any word from Defendants. Ms. Eller's counsel prompted Defendants on June 5, and only then did Defendants request an extension to respond. Defendants missed the new deadline as well, providing their first responses and objections in June 21. Even still, Defendants did not serve the bulk of their production until July 10—more than five weeks after their responses to the RFPs had originally had been due. That production included 38,000 emails to, from, or naming Ms. Eller in any way, without regard for duplicates or relevance. Given the minimal effort Defendants undertook to process those documents, it is unclear why they could not timely produce them. And even this dump of documents remains incomplete; Defendants have not produced any emails that predate June 2014, despite Plaintiff's instruction that communications be produced dating back to 2008, and despite the lack of any timeframe-based objection by Defendants. Thus, even now, three-and-a-half months after their responses were originally due, Defendants have failed to respond fully to Plaintiff's discovery requests.

---

[4]     Also, as discussed further below, Defendants' choice to use the notice-of-intent process for their motion to extend time, despite the fact that such motions are exempted from that process by the CMO, caused further delay. Indeed, it has created a situation where they are seeking to extend a disclosure deadline with a motion filed seven days after the deadline has passed.

As another example, Defendants produced another subset of documents on June 21 without any metadata, in violation of Rule 34.  Defendants have yet to comply with Plaintiffs' repeat requests for that metadata, more than ten weeks later.  Indeed, Defendants have yet to even respond to Ms. Eller's July 24th letter reiterating her request for that data.  Nor have Defendants acknowledged, much less responded to, Ms. Eller's August 30th letter that, among other things, reminded Defendants that they had not yet responded to the July 24th letter.  Nor have Defendants acknowledged Ms. Eller's September 12th email again reminding Defendants about these unanswered outstanding discovery communications.

Finally, Defendants note in their Motion that the Court has already extended the deadline for discovery.  *See* Motion ¶ 16.  While they characterize that extension as ostensibly for the purpose of allowing more time for Ms. Eller's expert's disclosures, all parties requested the extension, which moved *all* deadlines by two weeks, including those for Defendants' expert disclosures.  Defendants' request for an additional 60 days' extension, on top of those two weeks they already received, is a result of only their own lack of diligence in this case, and should not be granted.

## III.    Defendants' Motion Is Procedurally Improper.

Finally, neither prong of Defendants' motion should be granted because Defendants have not complied with this District's local rules and the Court's CMO.

*First*, Local Civil Rule 104.7 provides that the Court will "not consider any discovery motion unless the moving party" files a certificate describing a conference between the parties attempting to resolve the matter without motion practice.  Defendants' filing is not accompanied by any such certificate, and the email correspondence attached to the Notice of Motion is no substitute, as it reveals that Defendants made no effort at all to resolve the matter prior to bringing it to the attention of the Court.  Defendants' counsel's email dated August 12 provides

essentially no information about the proposed examination or Dr. Cephas, much less than even the meager amount provided in Defendants' filing. *See* Notice of Intent, Ex. A. Ms. Eller's response explained as much, noting that she could not consent to an examination without information concerning Dr. Cephas's qualifications and experience or the scope and methodology of the proposed examination. *See id.* Defendants' counsel could have responded with such information, or they could have proposed a time for the parties to meet and confer about the subject. But they did neither, instead filing the Notice of Intent two days after Ms. Eller's response. This action does not evidence any "sincere attempt[] to resolve the differences," as required by Rule 104.7; accordingly, the Court should not consider the Motion.

This failure to abide by this Local Rule, an absence of any sincere attempt to engage cooperatively, suggests that Defendants perceive that in a worst-case scenario, the Court will deny this Motion with leave to refile after the parties meet-and-confer. Such a result would only further delay the discovery period in this case, which Defendants also appear to desire by their actions in this case. Thus, Ms. Eller asks that the Court deny this Motion without leave to refile.

*Second*, Defendants opted to ignore the Court's CMO by not filing right away a motion to extend the deadline for their expert disclosure, instead including it in their Notice of Intent despite the fact that the CMO provides that such filings (in lieu of simply filing a motion on the docket) "applies to any and all motions … with the exception of (1) motions for extension of time … ." That the CMO excludes motions to extend time from the notice-of-intent procedure makes sense; the steps involved in that procedure take more time than simply filing a motion. If applied to a motion to extend, the process would often create a situation where the actual motion to extend time postdated the deadline the movant seeks to extend, causing further delay and inefficiencies. This is precisely what happened here: because Defendants did not follow the

14

Local Rules and CMO, and thus did not simply move to extend their expert disclosure deadline, the resolution of this issue will likely come no earlier than September 24, the date Defendants' reply is due, *three weeks* after the deadline they are seeking to extend will have expired.

Defendants appear to have recognized that their request for relief is now much delayed, and thus contended that because they filed a Notice of Intent, that "the time to file a motion is tolled to the date set by the Court" under the guidelines of the CMO.  Motion ¶ 15.  But this misreads the CMO.  Not only does the CMO specifically exempt "motions for extension of time" from the notice-of-intent process, the only thing that is tolled by following the CMO's procedure is "the time to file such motion."  Here, Defendants do not have any *motion filing deadline* that they seek to extend; rather, the subject of their motion is the deadline for the timely *disclosure* of their expert report.  Thus, the tolling discussed in the CMO, does not apply to the date Defendants seek to extend.  Moreover, in order for Defendants to have timely disclosed their expert report on September 3, any motion seeking an examination under Rule 35 would have needed to be filed much, much earlier than August 21, the date that Defendants filed their Notice.  In sum, Defendants have left very little time in the discovery calendar by delaying even a mention of a Rule 35 examination, and then by employing the incorrect procedure for seeking a *disclosure* deadline extension.  This is not what the CMO process is designed for, and Defendants' delay should not be rewarded.

All told, Defendants' failure to follow the District's Local Rules and the guidelines of the CMO might not by, themselves, be sufficient to deny their Motion, but these steps have further delayed the course of discovery, a tactic Defendants have employed across all their discovery obligations to date.  In combination with the above other factors, this fact further confirms that this Court should not grant Defendants' Motion.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' request that it order Ms.

Eller to undergo a Rule 35 examination and for a 60-day extension of the discovery deadline.


Dated: September 17, 2019                                      Respectfully submitted,

 /s/ Omar Gonzalez-Pagan                          /s/ Elliott C. Mogul
Omar Gonzalez-Pagan                               Paul Pompeo (admitted *pro hac vice*)
(admitted *pro hac vice*)                         Elliott C. Mogul (admitted *pro hac vice*)
Carl Charles (admitted *pro hac vice*)            Thomas McSorley (No. 18609)
LAMBDA LEGAL DEFENSE AND                          ARNOLD & PORTER
EDUCATION FUND, INC.                                 KAYE SCHOLER LLP
120 Wall Street, 19th Floor                       601 Massachusetts Ave., NW
New York, NY 10005                                Washington, DC  20001-3743
Telephone: (212) 809-8585                         Telephone:  +1 202.942.5000
Fax: (212) 809-0055                               Fax:  +1 202.942.5999
ogonzalez-pagan@lambdalegal.org                   paul.pompeo@arnoldporter.com
ccharles@lambdalegal.org                          elliott.mogul@arnoldporter.com
                                                  tom.mcsorley@arnoldporter.com
Puneet Cheema (admitted *pro hac vice*)
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
1776 K Street NW, Suite 722
Washington, DC 20006
Telephone: (202) 804-6245, ext. 596
pcheema@lambdalegal.org


*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies under penalty of perjury under the laws of the United States of America and the laws of the State of Maryland that on September 17, 2019, I caused a true and correct copy of the foregoing document to be served via the Court's CM/ECF system on the following counsel of record for Defendants:

James E. McCollum, Jr.
Amit K. Sharma
McCollum & Associates, LLC
7309 Baltimore Avenue, Suite 117
College Park, Maryland 20740
Tel: (301) 864-6070
Fax: (301) 864-4351
jmccollum@jmlaw.net
asharma@jmlaw.net

/s/  Elliott C. Mogul
Elliott C. Mogul