**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| JENNIFER ELLER | Case Number: 18-cv-03649-TDC/TJS |
| Plaintiff, | |
| v. | |
| PRINCE GEORGE'S COUNTY PUBLIC SCHOOLS, et al. | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR DISCOVERY SANCTIONS**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

RELEVANT BACKGROUND AND PROCEDURAL HISTORY.................................................. 3

I.       Defendants' Failure to Institute a Litigation Hold................................................. 3

II.      Defendants' Belated and Incomplete Response to Plaintiff's Requests for Production..... 5

    A.   Defendants' Failure to Preserve PS-74 Disciplinary Reports....................................... 6

    B.   Defendants' Failure to Timely Produce Responsive Emails Consistent with Their
         Obligations................................................................................................................... 8

         1.   Defendants' Initial Failure to Produce Emails Predating Fall 2014 ....................... 8

         2.   Defendants' Belated Production of Emails Predating Fall 2014 ............................. 9

    C.   Defendants' Failure to Preserve Security Camera Recordings.................................. 13

III.     Defendants' Failure to Prepare Their Rule 30(b)(6) Deposition Designees..................... 14

LEGAL STANDARD..................................................................................................................... 18

ARGUMENT.................................................................................................................................. 19

I.       Defendants' Spoliation of Evidence ..................................................................... 21

    A.   Defendants Had An Obligation to Preserve Evidence............................................... 22

    B.   Defendants' Failure to Preserve Is the Result of Willful, or at Least Grossly
         Negligent, Conduct ................................................................................................... 23

    C.   Defendants Failed to Preserve Disciplinary Reports, Emails Predating Fall 2014,
         and Security Camera Recordings—All Relevant to Plaintiff's Claims...................... 24

         1.   PS-74 Disciplinary Reports.................................................................................. 25

         2.   Emails Predating Fall 2014.................................................................................. 26

         3.   Security Camera Recordings................................................................................ 27

II.      Defendants' Failure to Produce ........................................................................... 28

III.     Defendants' Failure to Prepare Their Rule 30(b)(6) Deposition Designees..................... 31

IV.      Discovery Sanctions Requested............................................................................ 32

CONCLUSION............................................................................................................................... 34

## INTRODUCTION

Plaintiff Jennifer Eller respectfully requests that the Court enter sanctions allowed under Federal Rule of Civil Procedure 37 and through its inherent powers to address Defendants' egregious failures to preserve relevant evidence, timely produce that evidence, and prepare Rule 30(b)(6) witnesses.

Ms. Eller is a transgender woman who taught English in middle and high schools in Defendants' school district, where she faced both a hostile work environment and retaliation during the five years between her social gender transition in spring 2011 and her leave of absence in fall 2016. Defendants allowed a hostile work environment to fester, rife with a pattern of frequent verbal and physical attacks, slurs, and misgendering. Ms. Eller continuously requested that Defendants address these incidents with firm responses and proactive training, but Defendants failed to do so. Worse, once Ms. Eller filed a formal internal grievance against a superior and a discrimination charge with the EEOC, Defendants took adverse employment action against her. Ms. Eller eventually had no choice but to resign to protect her mental and physical health.

Ms. Eller knows what happened to her, and how Defendants failed to take meaningful remedial steps to halt that harassment. In response to her numerous complaints while she was employed by them, and throughout this litigation, Defendants have attempted to minimize the extent and severity of the abuse Ms. Eller suffered and to defend their own response to her complaints. Ms. Eller is entitled to evidence that is within Defendants' sole custody both to support her claims and to rebut Defendants' defenses. But Defendants' behavior before and during the discovery period has limited Ms. Eller's access to that evidence, caused extensive delay to her day in court, and unjustifiably increased her costs of discovery.

At the root of Defendants' discovery failures appears to be an outright disregard for what

1

is expected of a litigant in federal court. *First*, ignoring blackletter law requiring reasonable efforts to preserve relevant documents upon notice of likely litigation, Defendants failed to take *any* steps, at *any* time prior to or during this litigation—through to the present day—to institute a litigation hold. No ordinary-course destruction of documents was halted anywhere within the Prince George's County Public Schools. No instructions were issued to individual officials or employees to preserve their own electronic or physical materials. And Defendants unapologetically admitted this is their standard operating procedure. This has, unsurprisingly, resulted in the spoliation of both hardcopy and electronic documents.

*Second*, Defendants failed to search for responsive electronic documents predating fall 2014—also consistent with what they have admitted is their standard operating procedure. Despite representing that such files no longer existed, a 30(b)(6) deposition late in discovery revealed that such documents did in fact exist, but Defendants had simply chosen not to search for them. And while Defendants finally did produce some of these documents, nearly a year after Ms. Eller served her requests for production and after depositions had been completed, this supplemental production was inconsistent and remains incomplete.

*Third*, Defendants failed to prepare their Rule 30(b)(6) designees to testify as to *Defendants'* organizational knowledge of the noticed topics, as the designated witnesses largely spoke only to their personal knowledge.

Ms. Eller does not make this motion lightly: As the Court will see from the procedural history below, Ms. Eller has provided Defendants with numerous opportunities across the 16 months of discovery to fulfill their obligations, only to be met with half-measures, delays, and misrepresentations at nearly every turn. Accordingly, merely reopening discovery is an insufficient remedy, and rather would reward Defendants for flouting their obligations by further

delaying Ms. Eller's day in court.  Ms. Eller requests that the Court address these failures by imposing sanctions that 1) prevent Defendants from denying facts about Ms. Eller's claims, 2) protect Ms. Eller from surprise from new evidence at trial or in a motion for summary judgment, and 3) compensate Ms. Eller for the increased discovery costs Defendants' behavior has caused.

### RELEVANT BACKGROUND AND PROCEDURAL HISTORY

**I.      Defendants' Failure to Institute a Litigation Hold**

Defendants have had notice of Ms. Eller's complaints—and the likelihood of litigation over them—for years, but have never, *to this day*, instituted a litigation hold to preserve relevant evidence.

Ms. Eller was a well-respected English teacher at Kenmoor Middle School, James Madison Middle School, and Friendly High School, all within Prince George's County Public Schools, from 2008 through the 2016-2017 academic year.  Ms. Eller socially transitioned to live in a manner consistent with her female gender identity in 2011, and informed her employer, Defendants, in March of that year.  Am. Compl. ¶¶ 5, 44 (Dkt. No. 4).  Almost immediately thereafter, Ms. Eller was subjected to harassment, ridicule, and other repeated discriminatory behavior by students, parents, faculty, and staff.  *See, e.g.*, *id.* ¶¶ 44-45.

Ms. Eller repeatedly made her supervisors, and therefore Defendants, aware of the harassment she experienced starting in spring 2011 and occurring routinely through fall 2016.  *See* Ex. A, Pl.'s 2011-2015 Email Complaints of Harassment.  At first, Ms. Eller hoped that Defendants would act on the discrimination she faced in order to improve the school environment for its transgender community members.  As those repeated complaints were ignored, she escalated her complaints to ever more senior administrators in the school system during the remaining five years of her tenure.  *See, e.g.*, Ex. B, Pl.'s Oct. 2015 Emails Escalating

Complaints.  By December 2013, Ms. Eller's complaints had been elevated to a district-level compliance officer, Elizabeth Davis, though Ms. Davis was already aware of the harassment Ms. Eller first faced upon her transition.  *See* Ex. C, Dec. 2013 E. Davis Email Chain; Ex. D, May 20, 2011 Email from E. Davis to M. Fadli.  Nevertheless, Defendants never took steps to preserve documents or other evidence connected to these complaints.  *See* Ex. E, C. Guilday 30(b)(6) Dep., Tr. 57:10-62:20; Ex. F, PGCPS's Answers to Interrog., at 13 (Answer, 17).

In February 2015, Ms. Eller lodged an internal grievance of discrimination against assistant principal Paula Robinson, a direct supervisor; yet despite the apparent threat of litigation, Defendants did not take any steps to preserve documents or other evidence.  *See id.*; Ex. G, Feb. 20, 2015 Discrimination Incident Report.

Ms. Eller subsequently filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on June 3, 2015.  Ex. H, Jun. 3, 2015 EEOC Charge of Discrimination.  On September 21, 2017, the EEOC issued a determination finding reasonable cause to believe that Ms. Eller "was subjected to harassment, based upon her sex and gender identity, and unequal terms and conditions of employment, in retaliation for engaging in protected activity, in violation of Title VII."  Ex. I, Sep. 21, 2017 EEOC Letter of Determination, at 1.  The EEOC's determination letter concluded that Defendants were "aware of the conditions to which [Ms. Eller] was subjected throughout the period in question and failed to take effective corrective action."  *Id.*  Defendants did not institute a litigation hold when Ms. Eller filed her EEOC charge, throughout the period that Defendants engaged with the EEOC's investigator, when the EEOC issued its letter of determination, or when Defendants received the Department of Justice's right to sue letter to Ms. Eller in August 2018.  *See* Ex. E at 57:10-62:20; Ex. F at 13 (Answer, 17).

4

Not even when Ms. Eller filed her complaint in this action in November 2018 did Defendants institute a litigation hold.  *See* Ex. E at 57:10-62:20.  Indeed, 13 months into discovery, Defendants testified, through their 30(b)(6) witness, Cindy Guilday, that Defendants have *never* issued a litigation hold to prevent the spoliation of relevant documents.  *See id.*

The failure to issue a litigation hold was not a mere oversight; Ms. Guilday readily admitted that before 2016, Defendants had no policy or practice of issuing litigation holds in any matter.  *See id*. at 31:3-8, 33:2-22.  Ms. Guilday was unsure whether Defendants had *ever* issued a litigation hold prior to 2016.  And Defendants' practice since 2016 is no better:  Defendants' custom is to institute a litigation hold with regard to a litigation or other matter when a Defendant has been served with a specific document preservation request.  *See id*. at 31:21-32:9, 52:20-57:9.

## II.    Defendants' Belated and Incomplete Response to Plaintiff's Requests for Production

Plaintiff served requests for production ("RFPs") on Defendants on May 2, 2019.  *See* Ex. J, Pl.'s RFPs.  Plaintiff specified the timeframe for the requests as January 1, 2008 through November 28, 2018, which covered the period between the start of Ms. Eller's employment with Defendants and the date she filed her Complaint.  *Id.* at 4.  Plaintiff also instructed that electronically stored information be produced in TIFF form and with metadata.  *Id.* at 4-5.  The 15 requests covered a variety of topics relevant to Ms. Eller's claims, including all "Documents" concerning nondiscrimination policies, internal grievance procedures, and nondiscrimination training, as they relate to "sex, gender, sexual orientation, gender identity, gender expression, or transgender status."  *Id.* at 7-8 (Requests 4-5, 11-12).[1]  Another request sought all Documents

---

[1]    The RFPs defined "Documents" to include a variety of hardcopy materials, media, and electronically stored information.  Ex. J at 2-3.

5

concerning Ms. Eller's gender transition and her

> gender identity, transgender status, gender transition, gender expression, treatment, or discipline, dress, appearance, use of pronouns, use of restrooms, accommodation, health, safety, discrimination, bullying, harassment, or retaliation.

*Id.* at 6-7 (Request 2-3).  Plaintiff also requested Documents related to complaints she made to Defendants regarding harassment and security camera recordings of any incidents of harassment. *Id.* at 6-8 (Requests 1, 7-8).

Defendants did not object to Plaintiff's definitions, instructions, or requested timeframe. Indeed, Defendants did not respond at all to Plaintiff's requests until June 21, 2019, after Plaintiff reminded Defendants of their obligations, and even then Defendants served specific objections to only two of the 15 requests.  *See* Ex. K, Defs.' Resps. to RFPs, at 4, 5 (Responses 6, 8).  As to the remaining 13 requests, Defendants represented that "all responsive documents will be produced."  *Id.* at 2 (Response 1).

Despite their representation, Defendants' late June 2019 production was lacking, as it omitted any documents responsive to certain requests and had no metadata or other identifying information concerning the source of the documents produced.  Ex. L, Pl.'s Jun. 28, 2019 Letter. The parties subsequently met and conferred on July 3, 2019, and Defendants promised to start producing additional documents, including emails with metadata, the following week.  However, as discovery continued, it became evident that certain important documents were still missing from Defendants' production.

### A.    Defendants' Failure to Preserve PS-74 Disciplinary Reports

A central component of Ms. Eller's complaint is Defendants' failure to implement meaningful discipline of students who repeatedly harassed her following her transition.  PS-74 reports are the formal documentation of student misconduct and, when completed, of the

6

resulting disciplinary action to address the misconduct, if any.  Defendants have never produced any completed PS-74s, despite the fact that other produced documents referenced PS-74 reports arising out of students' ongoing harassment of Ms. Eller.  Ex. L at 2.

Defendants did produce *some* partial PS-74s from Ms. Eller's school-issued email account, but those are only the forms Ms. Eller herself attached to an email, and only include the information Ms. Eller provided when she reported the misconduct.  Those forms that Ms. Eller completed and turned in by hand, which was the typical practice at Friendly High School, Ex. M, K. Thompson Dep., Tr. 27:19-28:21, have not been produced.  More importantly, *none* of the PS-74s include information about what, if any, discipline was imposed on the students.  *See e.g.*, Ex. N, Example Produced PS-74s.

After Plaintiff followed up seeking production of completed PS-74s, Defendants reported on July 17, 2019 that none were retained from Friendly High School during the years of Ms. Eller's employment there, from fall 2011 through spring 2016.  Ex. O, Defs.' Jul. 17, 2019 Letter.  Plaintiff has repeatedly requested additional information about how or when this spoliation of documents had occurred, but Defendants have never responded to that inquiry, even after two assistant principals at Friendly High School, Robin Pope-Brown and Kevin Thompson, testified that copies of PS-74 reports should have been retained.  Ex. P, Pl.'s Jul. 24, 2019 Letter; Ex. Q, Pl.'s Jan. 31, 2020 Letter; Ex. R, Pl.'s Feb. 28, 2020 Email.

Ultimately, Ms. Pope-Brown was deposed again on March 11, 2020, this second time as Defendants' 30(b)(6) designated witness on "[t]he facts and circumstances concerning Defendant's collection and production of" documents other than security camera recordings and emails, including their "policy of maintaining" PS-74s, whether that policy was followed, and "[t]he location, history, and status of … PS-74s," among other topics.  Ex. S, Pl.'s Notice of Rule

30(b)(6) Deposition, Topic 10.  At that deposition, Ms. Pope-Brown was not prepared to speak on the topic, but she speculated that Defendants had not maintained copies of the completed PS-74s.  Ex. T, R. Pope-Brown 30(b)(6) Dep., Tr. 68:20-69:17.

### B.    Defendants' Failure to Timely Produce Responsive Emails Consistent with Their Obligations

#### 1.    Defendants' Initial Failure to Produce Emails Predating Fall 2014

Teachers, staff, and students within Defendants' schools use—and have used—district-issued email accounts to communicate.  Ms. Eller herself suffered much of the harassment, and reported much of the harassment, through her school email.  For that reason, many of the RFPs sought communications that would be expected to be found among emails sent and received using Defendants' email system.  However, *none* of Defendants' initial production included files from Defendants' email system.

It was only on July 10, 2019—after Plaintiff threated to file a motion to compel unless Defendants promptly corrected their discovery deficiencies—that Defendants produced over 38,000 electronic documents, mainly emails, including a large number of emails that were duplicates and/or were not responsive to any of the RFPs.  *See* Ex. L at 4; *see also* Ex. U, Defs.' Jul. 10, 2019 Letter.  Yet even that production was incomplete, as it did not include emails that predated August 12, 2014 (other than documents attached to emails sent after that date).

At the time of the July 10, 2019 production, Defendants admitted that their production was incomplete, and indeed over the following months Defendants produced a trickle of documents and information about the status of certain documents.  But Defendants never told Plaintiff that they had concluded their production of emails, and did not respond to Plaintiff's periodic inquiries.  *See* Exs. P-R; Ex. V, Pl.'s Aug. 30, 2019 Letter; Ex. W, Pl.'s Feb. 12, 2020 Email.  Finally, during a March 2, 2020 meet-and-confer, Defendants represented that no emails

dated between 2008 and August 2014 had been preserved and thus no longer existed.  Ex. X,

Pl.'s Mar. 3, 2020 Email.

### 2.   Defendants' Belated Production of Emails Predating Fall 2014

Plaintiff learned at the April 30 deposition of Defendants' Rule 30(b)(6) designee, Laurie

Tranmer, that this representation was false.  Far from not being available, emails predating

November 2014 could still be found in individual users' accounts—unless the individual user

had deleted them. Ex. Y, L. Tranmer 30(b)(6) Dep., Tr. 26:6-27:7.  This would include the email

accounts of former employees and other email users, such as Ms. Eller.  *Id.* at 27:8-29:2.

Defendants' witness admitted that Defendants retain custody and control over current and former

users' accounts, and that it is technically feasible for Defendants to search these sources for

emails.  *Id.* at 27:8-29:2, 38:8-39:12.  Moreover, individual users' computer, tablet, and mobile

hardware, all within Defendants' custody and control, could *also* contain emails that predate

November 2014, if the users saved those emails to their hard drives and those devices had not

been wiped clean.  *Id.* at 29:6-15.

However, Ms. Tranmer testified that it was Defendants' practice not to search individual

user accounts or hardware sources for emails in response to discovery requests in any litigation.

*Id.*  at 38:8-39:2, 45:20-46:5.  And that practice was followed in response to Plaintiff's RFPs in

June 2019.  That collection had searched only the limited archive of Defendants' email system

that includes emails dating back to November 2014 (known as the "Google Vault").  *Id.*  at 44:8-

45:7.  Indeed, Ms. Tranmer testified that in responding to Plaintiff's RFPs, Defendants did not

search *any* individual user's accounts or hardware, including Ms. Eller's school-issued account

or hardware.  *Id.* at 43:9-18, 46:14-22.

Upon learning of the deficiencies in Defendants' collection efforts, Plaintiff demanded an

immediate search and production of responsive documents from the individual user accounts and

hardware.  Plaintiff requested an explanation of the methodology used to identify and collect responsive documents in this supplemental production.  *See* Ex. Z, Pl.'s May 8, 2020 Letter, at 5. In order to help ensure the completion of this latest collection effort, and given the lack of transparency in Defendants' previous efforts, Plaintiff also provided a non-exhaustive list of individuals whose email accounts and/or hardware should be searched because they are likely to contain responsive documents.  *See id.* at 6; *see also* Ex. AA, Pl.'s May 15, 2020 Letter.

On May 12, 2020, Defendants "agree[d] that e-mails prior to 2014 from Ms. Eller's mailbox were not produced," noted that they had *only then* "captured Ms. Eller's e-mail box from 2008 to the present," and indicated that a production would be sent to Plaintiff.  *See* Ex. BB, Defs.' May 12, 2020 Letter, at 1.  Defendants further noted that they had instructed that a search be done of the other user accounts and that they were attempting "to locate and/or track Ms. Eller's issued hardware."  *See id.*

When Defendants failed to make any production from this new, belated search by May 19, 2020, Plaintiff filed a motion to extend the discovery deadlines by four weeks.  ECF No. 64. The Court granted that extension the next day, and instructed "Defendants [to] make every effort to meet [the June 16, 2020 deadline to complete their production] without seeking an extension, which will cause further delay in this case."  ECF No. 65.

Also on May 19, 2020, Defendants informed Plaintiff that their collection of documents from the files of current employees would rely on such employees, untrained in document collection and some likely unfamiliar with the case, to conduct a search of their own files "for e-mails/documents relating to Ms. Eller."  Ex. CC, Pl.'s and Defs.' Email Correspondence, at 3. Plaintiff objected to this protocol as unduly limiting the production and instead requested that a set list of search terms be used to search each custodian's email files.  *Id.* at 4.

On June 3, 2020, having not received any response from Defendants, Plaintiff provided Defendants with proposed search terms that would "ensure a more comprehensive search that would collect emails responsive to all of Ms. Eller's [RFPs]." *Id.* at 3.  Defendants rejected the use of these search terms in an email dated June 11, 2020, indicating that they would be searching files of custodians other than current employees using only the term "Eller." *Id.* Defendants provided no assurances that current employees—who were tasked with searching their own files—were instructed to conduct searches using any term anything other than "Eller."

After rejecting the use of Plaintiff's suggested search terms, and despite Plaintiff's repeated request for transparency into their search and collection methodology, Defendants produced very little by the new discovery deadline.  Instead, on the day of the deadline, Defendants sought a 30-day further extension, and—for the first time—affirmatively represented that they would use the search terms Plaintiff requested.  ECF No. 66 ¶ 6.  Plaintiff did not object to the extension, but urged the Court to hold Defendants to their commitment.  ECF No. 68. Indeed, the Court granted the extension, "to allow Defendants to retrieve the documents and run the search terms that were requested by Ms. Eller and agreed to by Defendants."  ECF No. 69.

Defendants' resulting production does not comply with this order, nor with Defendants' other discovery obligations, as is evident from three categories of material deficiencies.

*First*, the production demonstrates no consistent methodology of search and collection of documents across custodians, and Defendants have never disclosed how they conducted their document collection.  The limited production from over a dozen of the custodians suggests that Defendants did not in fact use a standard methodology, as emails and other electronic documents (1) were produced without metadata as requested by Plaintiff; (2) appear to have been scanned or forwarded from the custodian to Defendants' counsel or employees of Defendants' General

11

Counsel's Office;[2] and/or (3) include only emails or electronic documents that include the word "Eller," and not any that match one of the 21 other required search terms without also matching "Eller."  Indeed, certain key custodians produced only a handful of emails or electronic documents, a number that is not plausibly indicative of how many emails these individuals actually sent or received that were about or included Ms. Eller, or that included any of the other search terms Plaintiff suggested.

For example, Ms. Eller's pre-November 2014 email account had over 500 documents to or from Raynah Adams, the principal at Friendly High School.  Yet Defendants only produced 2 emails from Mr. Adams' files for the same time period.[3]  By contrast, Defendants earlier had produced over 800 emails from between November 2014 to August 2016 from Mr. Adams to Ms. Eller or mentioning Ms. Eller.

The same story repeats itself in Defendants' production of other custodians' pre-2014 emails.  As another example:  Ms. Eller's pre-fall 2014 email account included 141 emails to or from Ms. Robinson, the assistant principal subject to Ms. Eller's internal complaint of discrimination, yet Defendants produced only eight electronic documents from Ms. Robinson's account, including only three emails to or from Ms. Eller.

*Second*, for two custodians, Defendants produced *all* files from their email accounts to Plaintiff, including spam and trash folders, which together yield 70,000 documents.  It does not

---

[2]    Among the custodians whose files appear to have been collected in this manner are Mr. Adams, Ms. Pope-Brown, and Edward Ryans—the principal and an assistant principal when Ms. Eller worked at Friendly High School, and an instructional director to whom principals report. *See e.g.*, Ex. DD, Aug. 13, 2012, Email Requesting Diversity Assembly (Custodian R. Adams); Ex. EE, Sep. 2, 2015, Email from R. Adams to J. Eller (Custodian E. Ryans).

[3]    To be clear, Defendants have never claimed to have eliminated duplicative emails from their production, and in fact numerous duplicative emails have been produced from multiple custodians, including these two from Mr. Adams's account, which were also produced by Defendants from other custodians' productions.

appear that Defendants subjected these accounts to any search terms. This production unnecessarily multiplies Plaintiff's costs in reviewing the supplemental production, and made completing the review before the end of discovery impossible.

*Finally*, for a third of the identified custodians, including Maha Fadli (principal of Kenmoor Middle School, the school where Ms. Eller taught prior to Friendly High School) and James Whattam (a human resources officer tasked with liaising with Ms. Eller in connection with her gender transition), Defendants did not produce a single responsive email or electronic document in their supplemental production—despite the fact that responsive documents would have included any email mentioning, from, or to Ms. Eller, as her last name was one of the suggested search terms. The suggestion that these custodians never communicated with or about Ms. Eller by email is not plausible, as these custodians include individuals who had a close working relationship with her or who are known to have participated in at least some emails with or about Ms. Eller from their appearance in other custodians' productions. For example, the pre-fall 2014 email account of Ms. Davis include emails concerning Ms. Eller to and from Mr. Whattam and Ms. Fadli. Separately, Ms. Eller's school-issued email account shows 46 emails to or from Ms. Fadli. However, Defendants produced *no* emails from Mr. Whattam's and Ms. Fadli's accounts.

## C.     Defendants' Failure to Preserve Security Camera Recordings

There is no dispute that Defendants have security cameras at locations throughout the schools where Ms. Eller worked and was repeatedly harassed by students. Plaintiff requested security camera recordings of all incidents of harassment against Ms. Eller. Ex. J (Request 8). Defendants objected to the alleged overbroad nature of this request, and instead asked for specific dates, times, and locations to search for security camera recordings. Ex. K (Response 8). Plaintiff provided three dates—September 13, 2013; August 27, 2015; and September 23,

2015—that corresponded to some of the incidents of harassment in public areas of Friendly High School. Each of these incidents occurred after any reasonable person would have been on notice of likely litigation. For example, the August 27, 2015 and September 23, 2015 incidents occurred *after* Ms. Eller had filed both an internal grievance and her EEOC charge of discrimination.

Within hours after Plaintiff identified those dates, Defendants represented that no such recordings had been retained from two of them, and confirmed that no recordings remained from the third date in a letter sent few days later. Ex. FF, Defs.' Jul. 3, 2019 Letter; Ex. U. Based on Defendants' representations at the July 3, 2019 meet-and-confer, Plaintiff understood that "footage of these incidents, or any other incidents that would have been responsive to RFP 8, would have been captured at the time but none exists as of today because it was not retained." Ex. P at 4.

The testimony of Defendants' Rule 30(b)(6) designee on this topic, Brett Tranmer, confirmed that no recordings related to Ms. Eller's claims of harassment—i.e., more than just the three dates that had been identified—were saved, but rather had been written-over after 90 days pursuant to Defendants' usual practice. Ex. GG, B. Tranmer 30(b)(6) Dep. 45:2-5; *see also id.* at 30:22-32:2, 38:19-39:21, 41:13-42:2, 42:8-44:6; Ex. F at 8 (Answer, 8). Mr. Tranmer also confirmed that the locations where many incidents of harassment took place were under video surveillance that would have been available for digital download prior to the expiration of the 90-day period. *See* Ex. GG at 24:4-16.

## III.   Defendants' Failure to Prepare Their Rule 30(b)(6) Deposition Designees

Towards the end of the discovery period, Plaintiff noticed a Rule 30(b)(6) deposition covering 14 specific topics of relevance to the litigation. *See* Ex. S. Defendants chose six different individuals to address these topics. The depositions of designees Brett Tranmer,

14

Amana Simmons, and Robin Pope-Brown took place in March 2020, before the restrictions precipitated by the COVID-19 pandemic required a delay in taking the final three. These last three depositions, of Cindy Guilday, Robin Welsh, and Laurie Tranmer, took place by videoconference between April 24 and 30, 2020.

Five of Defendants' six 30(b)(6) designees were insufficiently prepared to offer organizational testimony. Each offered no more than their personal knowledge and/or professed their lack of personal knowledge over some topics for which they had been specifically designated:

1.      Defendants designated Amana Simmons to testify about Defendants' nondiscrimination policies, training, and internal complaint procedures, *see* Ex. S, Topics 1-5, 7-9, 14. The timeframe provided for all Rule 30(b)(6) topics, to which Defendants did not object, was January 2008 to November 2018. *Id.* at 4. However, Ms. Simmons was unable to testify as to events prior to the start of her employment in 2014. *See, e.g.*, Ex. HH, A. Simmons 30(b)(6) Dep., Tr. 48:3-49:10, 149:10-17, 150:2-8, 152:10-16. Defendants did not designate any other witness to cover the period prior to 2014.

Ms. Simmons also had limited knowledge of other matters for which she had been designated, even during her tenure, including the substance of in-school training for faculty and students or disciplinary actions taken against an employee subject to Ms. Eller's internal complaint. *See id.* at 49:12-18, 51:7-13, 57:9-14, 58:4-59:15, 92:18-93:9, 94:1-12, 94:18-95:9, 182:12-17. Defendants' counsel did not help prepare Ms. Simmons, and she did not speak to anyone else in advance of her deposition who might have helped her prepare. *See id.* at 14:11-22, 15:9-14. Moreover, Ms. Simmons reviewed only documents that Defendants had produced at that time, *id.* at 15:14-16:20, which preceded Defendants' supplemental production of pre-fall

2014 electronic documents and which were grossly incomplete.

2.      Defendants designated Robin Welsh to testify about Defendants' training and evaluations of the efficacy of such trainings. *See* Ex. S, Topics 12-13.  However, Ms. Welsh had no knowledge concerning key aspects of these topics.  For example, she was not able to say whether Defendants evaluate the efficacy of trainings.  Ex. II, R. Welsh 30(b)(6) Dep., Tr. 155:8-164:15.  Further, Ms. Welsh did not know whether Defendants provided students with non-discrimination training between 2011 and 2016—almost the entire period of Ms. Eller's employment with Defendants.  *See id.* at 102:9-13 (she "[could not] answer the question from 2011 up to the 2016 school year").  Ms. Welsh was also unable to answer many questions regarding the format or specific content of staff trainings.  For instance, Ms. Welsh did not know whether a training offered to specialized staff discussed transgender status, the use of proper pronouns, or how to relate to transgender colleagues, and could not answer questions about its format or how much time was spent on gender identity and transgender status.  *See id.* at 71:12-85:19. She could only "infer" that the training generally dealt with transgender issues because "LGBTQ" was in its title.  *See id.* at 79:20-80:5.

By the end of her Rule 30(b)(6) deposition, Ms. Welsh had answered "I don't know" *ninety-seven times* to questions on the two topics on which she had been designated to testify. *See, e.g.*, *id.* at 72:16-21; 72:13-22; 73:6-13; 74:14-19; 85:20-86:16; 89:20-90:15.  Ms. Welsh had not been educated by Defendants on these topics, *see id.* e.g., 89:20-90:4; 102:22-103:5; 110:6-13, and she spoke to Defendants' counsel for, at most, twenty minutes, *see id.* at 32:8-14.

3.      Defendants designated Robin Pope-Brown to testify about Defendants' faculty evaluations and class assignments; maintenance, collection, and production of documents; and discipline imposed on students, faculty, and staff as a result of reports of discrimination.  *See* Ex.

S, Topics 6, 10, 11; Ex. T at 12:13-18, 13:2-8, 14:14-19.  However, Ms. Pope-Brown was unable to answer many questions about each of these topics, such that Defendants' counsel attempted to redefine the topics for which she had been designated in the midst of the deposition.  For example, Ms. Pope-Brown was unable to testify about (1) what "elements" a principal would evaluate for faculty reviews during Ms. Eller's tenure; (2) whether there was a guidance or policy document concerning these evaluations; (3) what factors had led to Ms. Eller being removed from teaching Advanced Placement English classes; or (4) whether other teachers had any success in getting a higher proportion of their students to pass the Advanced Placement English exam.  *Id.* at 26:19-28:4, 31:6-11, 35:3-12, 42:14-44:14.[4]

Despite having been designated to speak about document maintenance, collection, and production other than emails and video recordings, Ms. Pope-Brown was only prepared to discuss the PS-74 reports, and Defendants' counsel tried to limit her designation at the deposition.  *See id.* at 55:13-59:18, 69:18-71:9.  Even as to PS-74s, Ms. Pope-Brown could only speculate as to whether Defendants had searched student files to collect them for litigation, and could not say who at Friendly High School was responsible for their maintenance before she was personally employed there.  *See id.* at 61:13-62:5, 66:3-8, 67:1-68:3, 68:20-69:17.

Ms. Pope-Brown was also unable to answer what disciplinary actions others had imposed on students and faculty.  *See id.* at 80:4-9, 81:3-82:19, 84:14-18.  And with regard to events in which Ms. Pope-Brown had been personally involved, she could only recall that any discipline imposed would have complied with the Student Code of Conduct under the category for behavior she termed "sexual harassment."  *See id.* at 85:17-87:14, 88:13-91:15, 95:5-16.  However, the

---

[4]     Indeed, Ms. Pope-Brown only began to recall some information about evaluations when Defendants' counsel, without informing Ms. Eller's counsel first, began showing her documents on his computer screen during the deposition.  Ex. T at 36:8-38:5.

Code provides for a wide range of discipline (from a "reprimand" through in-school suspension and psychological referrals) and Ms. Pope-Brown could not say which of these actions were employed when Ms. Eller complained about harassment from students. *Id.*

Similarly, Ms. Pope-Brown was not prepared to discuss any remedial or disciplinary actions taken against faculty or staff for discriminating against Ms. Eller, and Defendants' counsel announced that a Rule 30(b)(6) witness who had already testified, and who had not been designated for that topic, would have that information. *See id.* at 102:22-105:18. Ms. Pope-Brown's preparation was limited to a 30-minute conversation with Defendants' counsel the day before her deposition; she did not speak to anyone else or review any document other than the deposition notice to prepare, *id.* at 16:4-17:14.

4-5.    Brett Tranmer and Cindy Guilday had similar gaps in their ability to speak to Defendants' knowledge, although they were designated to cover comparatively narrower topics. Mr. Tranmer had not reviewed anything to prepare for his deposition concerning Defendants' security camera recordings since July 2019, when all he had done was search for recordings of the three dates Ms. Eller had identified in connection with her RFPs. Ex. GG at 14:14-16:17. Thus, he could not answer broader questions, such as whether any footage connected to Ms. Eller's complaints had ever previously been saved. *Id.* at 45:2-5. Ms. Guilday, who testified about Defendants' litigation hold procedures, was unable to answer questions about the individuals involved in carrying out the procedure and about any litigation holds issued prior to 2016. Ex. E at 30:10-32:16, 34:4-17, 35:16-44:15, 50:14-21.

## **LEGAL STANDARD**

If a party "fails to obey an order to provide or permit discovery," the court may "issue further just orders" that sanction the party's conduct. Fed. R. Civ. P. 37(b)(2)(A). Sanctions are also available to a court to address a party's spoliation of evidence, *Thompson v. U.S. Dep't of*

18

*Hous. & Urban Dev.*, 219 F.R.D. 93, 101 (D. Md. 2003), or when a party fails to appear for a deposition, Fed. R. Civ. P. 37(d)(1).

Whether to impose sanctions is committed to the Court's discretion. *See Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 40 (4th Cir. 1995). When determining what, if any, sanctions should be imposed under Rule 37, courts consider four factors: (1) whether the non-complying party acted in bad faith; (2) the amount of prejudice suffered by the other party as a result of the failure to comply; (3) the deterrent value of dismissal as a sanction for non-compliance; and (4) the efficacy of a less drastic sanction. *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 348 (4th Cir. 2001). As this Court has observed, "[s]poliation sanctions should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *Simone v. VSL Pharm., Inc.*, No. CV TDC-15-1356, 2018 WL 1365848, at *7 (D. Md. Mar. 16, 2018) (internal quotation marks and citation omitted).

The nonexhaustive list of potential orders that a court may enter to sanction discovery failures includes: "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;' and "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A).

## ARGUMENT

Ms. Eller experienced repeated harassment on the basis of her sex, gender identity, and transgender status while she was in Defendants' employ. She continuously pleaded for a meaningful response from Defendants—including more robust disciplinary action and enhanced nondiscrimination policies and training—but for five years, Defendants either failed to react or reacted poorly to both the harassment and Ms. Eller's pleas. The repeated harassment, and Defendants' unwillingness to remedy it, created a hostile work environment.

19

Ms. Eller carefully documented much of the harassment she experienced, primarily through multiple emails to various supervisors in her school and at the district level, but also through written reports submitted pursuant to school policies. Upon her resignation, Ms. Eller no longer had access to the hardcopy files she kept at the school where she taught, her school-issued email account, or her school-issued electronic devices. Nor did Ms. Eller ever possess or have access to some of the evidence recording some of the harassment she endured or the actions taken by Defendants in response.

On the other hand, Defendants had video recordings of hallway interactions, where some of the harassment of Ms. Eller took place. Defendants had internal documentation of how Ms. Eller's complaints over time were handled, and what disciplinary steps—or lack of disciplinary steps—were taken. Defendants presumably had private communications about Ms. Eller, and the nature of the hostile work environment that was created around her. Accordingly, the bulk of relevant evidence is in Defendants' custody, making their compliance with their discovery obligations crucial to Ms. Eller's ability to fully support the elements of her claims and to rebut Defendant's efforts to justify their actions.

But Defendants' actions—and inaction—have stymied Ms. Eller's reasonable efforts to obtain this evidence. Just as they ignored and dismissed Ms. Eller's complaints of harassment, Defendants ignored and dismissed their obligations to preserve and produce evidence and to prepare Rule 30(b)(6) designees to testify on their behalf. And just as Ms. Eller spent years trying to get Defendants to pay attention to the hostile work environment through which she suffered, Ms. Eller spent 16 months giving Defendants one opportunity after another to produce and supplement relevant evidence plainly responsive to her discovery requests. But these efforts were met with indifference and ineptitude. Through their spoliation of evidence, failure to make

20

reasonable efforts to search and produce evidence, and their minimal to non-existent preparation of their Rule 30(b)(6) designees, Defendants have shown that they care as little about their discovery obligations as they did about Ms. Eller's harassment while she was in their employ.

Each of Defendants' transgressions would be sanctionable even if viewed in isolation. But when viewed together, there is no way to consider Defendants' actions as being in good faith.  Accordingly, this Court should order discovery sanctions that will at least partially remedy the potential prejudice Ms. Eller now faces and deter such behavior in the future, including established facts/adverse inferences, preclusion orders, and monetary sanctions.

## I.      Defendants' Spoliation of Evidence

Defendants never instituted a litigation hold in connection with Ms. Eller's allegations, and the resulting spoliation affects a wide variety of relevant evidence, some of which Ms. Eller may never even know about because it has been permanently lost.  But what is known to Ms. Eller—that Defendants have lost or destroyed PS-74 discipline reports, emails predating fall 2014, and security camera recordings—reveals that evidence that would be central to supporting Ms. Eller's claims no longer exists.  Discovery sanctions are necessary to address this spoliation.

Spoliation is the "destruction or material alteration of evidence ... or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (internal citations omitted).  As this Court has held, "[i]n order to prove that spoliation warrants a sanction, a party must show:

> (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a culpable state of mind; and (3) the evidence that was destroyed or altered was relevant to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.

*Simone*, 2018 WL 1365848, at \*1-2 (internal citations and quotation marks omitted); *see also*

*EEOC v. Performance Food Grp., Inc.*, No. CV CBB-13-1712, 2019 WL 1057385, at *5 (D. Md. Mar. 6, 2019) (same). "Courts have broad discretion when deciding whether to impose sanctions" for spoliation of electronically stored information under Rule 37(e). *Al-Sabah v. Agbodjogbe*, No. CV ELH-17-730, 2019 WL 4447235, at *4 (D. Md. Sept. 17, 2019) (quoting *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 103 (E.D. Va. 2018)).

**A.      Defendants Had An Obligation to Preserve Evidence**

Defendants have failed to preserve material evidence, an obligation which arises not only during litigation, but also during the "period before the litigation when a party reasonably should know that the evidence may be relevant to the anticipated litigation." *Performance Food*, 2019 WL 1057385, at *3 (quoting *Silvestri*, 271 F.3d at 591). The duty to preserve "encompasses any documents or tangible items authored or made by individuals likely to have discoverable information that the disclosing party may use to support its claims or defenses." *Broccoli v. Echostar Commc'ns Corp.*, 229 F.R.D. 506, 510 (D. Md. 2005) (citing *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217-18 (S.D.N.Y.2003)).

In the context of Ms. Eller's Title VII and IX claims, the obligation to preserve attached when Ms. Eller's supervisors learned about her allegations of harassment. *See Broccoli*, 229 F.R.D. at 510. In *Broccoli*, the court found that the duty to preserve began when the plaintiff informed supervisors of one supervisor's harassing behavior and made numerous human resources complaints. *Id.* at 510-11. Thus, while the plaintiff did not file his official complaint with the EEOC until February 2002, the duty to preserve evidence began as early as January 2001 when direct supervisors learned about the behavior. *Id.* at 511.

Here, Ms. Eller made her supervisors aware of incidents of harassment that started as soon as she began her public gender transition in spring 2011 and continued during her remaining five years as Defendants' employee. *See supra* at 3. These complaints triggered Ms.

22

Eller's duty to preserve relevant evidence. *See Broccoli*, 229 F.R.D. at 510. But at a minimum, the obligation would have attached at the time Ms. Eller filed a formal internal complaint in February 2015 regarding the harassment she experienced by a supervisor, assistant principal Paula Robinson, or at the time Ms. Eller filed a charge of discrimination with the EEOC in June 2015. *See supra* at 4. But Defendants did not make any effort to preserve any evidence in 2015. Indeed, Defendants did not make any effort to preserve evidence after the Department of Justice issued its Right-to-Sue Letter or even *once this litigation was actually filed. See supra* at 4-5.

**B.      Defendants' Failure to Preserve Is the Result of Willful, or at Least Grossly Negligent, Conduct**

As this Court has held, "for a court to impose some form of sanctions for spoliation, any fault—be it bad faith, willfulness, gross negligence, or ordinary negligence—is a sufficiently culpable mindset." *Simone*, 2018 WL 1365848, at *4 (citing *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 529 (D. Md. 2010)) (internal quotation marks omitted). "In the context of spoliation, ordinary negligence is the failure to identify, locate, and preserve evidence, where a reasonably prudent person acting under like circumstances would have done so." *Id.* "A finding of gross negligence requires a similar showing as ordinary negligence, but to a greater degree." *Id.* And willfulness requires "intentional or deliberate conduct resulting in spoliation," albeit short of conduct done with the purpose of depriving another party of evidence. *Id.* (citing *Buckley v. Mukasey*, 538 F.3d 306, 323 (4th Cir. 2008)).

When Defendants' obligations to preserve began, they had a duty to suspend any routine document retention policy and affirmatively issue a litigation hold. *See Zubulake*, 220 F.R.D. at 217-18. Litigation holds ensure that potentially relevant evidence is identified, located, and preserved for anticipated use in litigation. *Simone*, 2018 WL 1365848, at *2. A party's failure to impose a litigation hold qualifies as at least grossly negligent conduct. *See Performance*

23

*Food*, 2019 WL 1057385, at \*6; *Cognate BioServices, Inc. v. Smith*, No. WDQ-13-1797 (TJS), 2015 WL 5158731, at \*1 (D. Md. 2015).

However, the lack of a litigation hold here was not merely the result of an oversight, but rather was consistent with the Defendants' practice of implementing a litigation hold in response to a specific request from an opposing party that they preserve evidence. *See supra* at 5; Ex. E at 31:21-32:9, 52:20-57:9. But the law does not put the burden on an opposing party to ask for relevant evidence to be preserved. *See, e.g.*, *Herman v. City of New York*, 334 F.R.D. 377, 382 (E.D.N.Y. 2020) (noting that a defendant's excuse for spoliation that the plaintiff had not submitted a preservation request was "absurd," and holding that "[i]t is the obligation of Defendants to preserve evidence and send preservation notices for its documents, not the other way around"). The adoption of this practice is a willful decision that inevitably leads to the spoliation of relevant evidence anytime the facts of a case stretch over the course of a number of years and/or the start of litigation is delayed by a required administrative process, such as the EEOC complaint process here.

Accordingly, the Court should find that the spoliation here, caused by the failure to implement a litigation hold, was willful or at least grossly negligent.

**C.      Defendants Failed to Preserve Disciplinary Reports, Emails Predating Fall 2014, and Security Camera Recordings—All Relevant to Plaintiff's Claims**

Without a litigation hold, Defendants have lost, misplaced, or allowed for the deletion of at least three categories of relevant evidence: the PS-74 student disciplinary reports, emails predating Fall 2014, and security camera recordings. Defendants have admitted that PS-74s and security camera recordings have been lost. The loss of emails is evident from the gaps in the results of Defendants' belated attempt to recover these older records. Each of these categories would provide relevant unique information that could support Ms. Eller's claims or which would

24

allow her to rebut Defendants' defenses; the fact that they no longer exist prejudices her.

### 1.      PS-74 Disciplinary Reports

Defendants admitted that they never retained *any* of the completed "PS-74" student

discipline reports from the four years of Ms. Eller's tenure at Friendly High School.  *Supra* at 7.

The PS-74 reports are relevant because they would have documented not just many of the

incidents of student-caused harassment that Ms. Eller experienced, but also Defendants'

contemporaneous evaluation of these incidents and any resulting disciplinary action taken—or

the lack thereof.  As Mr. Thompson, a former assistant principal at Friendly High School,

testified, teachers would fill out these forms to report student misbehavior, and later on,

administrators would complete the forms by explaining what discipline, if any, had been

administered to the student.  Ex. M at 25:20-26:20, 29:7-15.  Thus, the completed forms would

provide evidence not only of Ms. Eller's report of assault, harassment, and other discriminatory

behavior by students, but would also be evidence of Defendants' non-existent, incomplete, or

indifferent investigation of and response to these incidents.

The lack of the complete PS-74s is prejudicial.  Without these reports, some instances of

student-caused harassment will be evidenced by Ms. Eller's testimony alone.  While this

testimony is, of course, admissible and persuasive evidence, contemporaneous recordings of the

discrimination would likely be even more convincing to a factfinder.  Moreover, Defendants

appear to take the position that offending students were appropriately disciplined.  *See, e.g.*,

Ex. T at 82:6-8, 85:17-18, 86:16-19.  However, their own witnesses could not testify to details,

and the best evidence of that discipline—the PS-74s—has been lost due to Defendants' conduct.

*See id.*; Ex. M at 107:21-112:15; Ex. JJ, R. Adams Dep., Tr. 174:22-175:21, 180:11-182:4; Ex.

KK, R. Pope-Brown (Personal Capacity) Dep., Tr. 129:13-130:18.  The absence of these

complete reports from the record will create challenges for Plaintiff in proving this element of

25

her claim, yet could provide Defendants carte blanche to testify as to their conduct without fear of impeachment.

### 2.    Emails Predating Fall 2014

The failure to institute a litigation hold also resulted in the destruction or loss of emails and other electronic documents.  Plaintiff learned late in discovery that, contrary to prior representations by Defendants' counsel, Defendants had not in fact lost all emails prior to fall 2014.  *See supra* at 9.  Rather, Defendants had simply determined not to search the sources under their control that contain those earlier emails.  *See id.*  Accordingly, Plaintiff demanded that Defendants complete a comprehensive review and production of responsive emails from all sources under their custody, using a custodian list and searches that Defendants agreed to. Indeed, the Court's order granting Defendants' request for an extension of time acknowledged and adopted that agreement.

The resulting uneven production, however, strongly implies that responsive emails sent by or to some or all of these custodians have been spoliated.  Defendants have supplied no explanation why certain accounts had responsive documents suggesting other custodians would similarly have responsive documents, but none were produced from those other custodians.

For example, the disparity of the numbers of emails found in Mr. Adams and Ms. Eller's pre-fall 2014 email accounts strains credulity—how could the principal of Ms. Eller's school have only two emails with or about Ms. Eller between 2011 and fall 2014, when Ms. Eller's emails from that period and both Ms. Eller and Mr. Adams' emails from the post-fall 2014 period show numbers of emails orders of magnitude larger?  *See supra* at 12.  Similarly, it is implausible that email accounts of Mr. Whattam, the human resources officer serving as a point person when Ms. Eller underwent her social transition, and Ms. Fadli, Ms. Eller's direct supervisor at that time, could have not a single email with or about Ms. Eller, and Ms. Davis's

production confirms that is not the case. *See supra* at 13.  Nor could Ms. Robinson have only

three emails to or from Ms. Eller predating fall 2014 (and none hitting on *any* other search term),

when Ms. Eller's account itself reflects 141 emails to or from Ms. Robinson.  *See supra* at 12-13.

The relevance of the lost emails can be readily inferred from those emails that have not

been lost.  Emails after November 2014 show that Ms. Eller routinely reported incidents of

harassment to her supervisors, as well as the occasional email response or following up from

those administrators.  Emails prior to 2014 also include emails from Ms. Eller reporting incidents

of harassment, but given the meager production from most custodians, any follow up or

conversations about this harassment by email that did not include Ms. Eller have been lost.  An

email from one custodian's inbox shows that Mr. Whattam, the human resources officer called in

to assist Ms. Fadli when Ms. Eller informed her of her gender transition, himself misgendered

Ms. Eller multiple times—consistent with Ms. Eller's description of some of the harassment she

experienced.  Ex. LL, May 19, 2011, A. Zuckerman Email Chain, at 2.  Unfortunately, due to

Defendants' spoliation caused by users' deletion of emails in the absence of a litigation hold,

Plaintiff has been deprived from further emails or electronic documents that could shed light on

the discrimination she faced and Defendants' failure to take this discrimination seriously.

### 3.    Security Camera Recordings

Defendants' schools have numerous security cameras in non-classroom areas of their

campus, including hallways, parking lots, and cafeterias.  Defendants maintain a 90-day over-

write policy for the recordings made by these cameras, but are able to download portions to save

on digital media, so that a particular recording is not lost after 90 days.  *See supra* at 14-15.

Because there was no litigation hold in connection with Ms. Eller's complaints, recordings that

captured incidents of harassment against Ms. Eller in these areas has been lost.  *See id.*  This

includes even recordings from specific dates Plaintiff identified for Defendants that postdated

Ms. Eller's filing of an EEOC charge of discrimination—long after a litigation hold should have been implemented.

Had any security camera recordings been retained, it would have provided a visual recording of some of the incidents of harassment that Ms. Eller experienced during her tenure, demonstrating the severity of those incidents. Many of the incidents of harassment that Ms. Eller complained about occurred in locations under video surveillance. *See id.* And retaining these recordings would not be burdensome or out of the ordinary; Defendants' designee testified that school administrators, security personnel, the general counsel's office, and local authorities sometimes submit requests for security camera recordings to be retained on an *almost daily basis*. Defendants themselves find these recordings to be relevant for investigating matters at a school. Ex. GG at 33:3-34:9; Ex. F at 8 (Answer 8).

If Plaintiff had access to the security camera recordings that Defendants allowed to be deleted, she would be able to provide a visual record of some of the discrimination she faced, undoubtedly compelling evidence for a factfinder. Without it, Plaintiff may be prejudiced in her effort to demonstrate the severity and upsetting nature of the harassment, and Defendants could again freely downplay their significance.

## II.     Defendants' Failure to Produce

Defendants have also failed to comply with their obligations to produce documents, time and again taking half-steps to produce that have caused delay, confusion, and an incomplete evidentiary record. Plaintiff has allowed Defendants 16 months to comply with their obligations. Given past practice, further opportunities would not ensure compliance, only further delay. Plaintiff asks the Court to impose sanctions that would address the delay, increased costs, and missing evidence caused by these failures.

Under Rule 26(b)(1), Plaintiff has the right to "obtain discovery regarding any

28

nonprivileged matter that is relevant to any party's claim or defense." *See also Carefirst of Md., Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 402 (4th Cir. 2003) (discovery "is broad in scope and freely permitted").  Plaintiff's RFPs, described *supra* at 5-6, cover evidence that would be relevant to her claims between January 1, 2008 through November 28, 2018.  Plaintiff's RFPs also provided reasonable instructions that would allow her attorneys to understand the source, dates, and other features of the production—typical especially for electronically-stored information.  Defendants did not object to the timeframe or the instructions, and did not object to any of the RFPs at issue here.

Absent justified objections, Defendants are not entitled to "select which" evidence they "deem[] relevant and withhold the production of others [they] deem otherwise." *Wright v. James City Cty.*, No. 4:12-cv-153, 2014 WL 1056693, at *2 (E.D. Va. Mar. 18, 2014), *aff'd*, 589 F. App'x 186 (4th Cir. 2015).  Yet that is what Defendants did.  Upon receiving Plaintiff's requests, Defendants selectively chose where to look for documents consistent with their established custom and practice.  *See* Ex. Y at 35:12-38:17, 45:20-46:5.  After failing to respond to repeated inquiries from Plaintiff about their incomplete production, *see supra* at 6-7, 9, Defendants then misrepresented the scope of their search and the existence of documents.  *See supra* at 9.  Only by happenstance, during a Rule 30(b)(6) deposition at the end of discovery, was Plaintiff able to identify Defendants' discovery failures.  *See id.*; Ex. Y at 43:9-18, 46:7-22.

But Defendants' failures did not end then.  As described above, *supra* at 11-13, the production *still* demonstrates no consistent methodology of search and collection of documents across custodians.  And despite representations to Plaintiff and the Court of their intent to conduct an appropriate search across all custodians using established search terms, as described above, Defendants still have failed to do so.  *See id.*

29

The lack of any electronic files from some custodians, and the very small number produced by others, may be a result of spoliation, not a failure to produce. But given the inconsistencies evident in Defendants' production, and Defendants' lack of any explanation for these results, Plaintiff cannot rule out that Defendants simply did not conduct reasonable and consistent searches across all the identified custodians, despite having asked the Court for additional time to do so.

All of these components of Defendants' failure to produce—the misrepresentation, the belated production, the reliance on untrained custodians for collection, the absence of metadata for many files, the mass email production from two custodians, and the missing custodians—have prejudiced Plaintiff. The Fourth Circuit, in evaluating a similar series of discovery failures, upheld a finding of bad faith and prejudice in light of a delay in producing responsive documents until near the end of discovery, as well as "numerous 'eleventh hour extensions' and [a] consistent disregard of discovery deadlines." *Zornes v. Specialty Indus., Inc.*, 166 F.3d 1212 (4th Cir. 1998). Indeed, the Fourth Circuit held that these factors supported the ultimate sanction of dismissal. *Id.*; *see also Jones v. Bremen High Sch. Dist. 228*, No. 08 C 3548, 2010 WL 2106640, at *2 (N.D. Ill. May 25, 2010) (finding that a substantial delay in production was a contributory factor for imposing sanctions). The Federal Circuit also evaluated similar behavior, holding that

> [w]here one party withholds evidence, repeatedly declines to truthfully
> respond to discovery requests or comply with the District Court's rules,
> and fails to properly designate witnesses and exhibits during discovery,
> such conduct prejudices an opposing party's ability to reach a rightful
> disposition of the case.

*United Constr. Prod., Inc. v. Tile Tech, Inc.*, 843 F.3d 1363, 1370 (Fed. Cir. 2016). So, too, here.

Plaintiff has been harmed by the delay in seeing her claims litigated. Discovery costs have multiplied as Plaintiff was required to delve into Defendants' retention practices before discovering their misrepresentation, engage in multiple rounds of document review, analyze a

large portion of electronic documents missing metadata, and wade through thousands of irrelevant documents.  Moreover, Defendants' belated supplemental production, discovered to be necessary during the *very last* deposition of their Rule 30(b)(6) designees, prevents Plaintiff from asking fact witnesses or Rule 30(b)(6) witnesses about newly produced documents, from calling new deponents whose knowledge only became obvious in these documents, and from having the benefit of these documents in preparing other discovery requests.

**III.     Defendants' Failure to Prepare Their Rule 30(b)(6) Deposition Designees**

The Court should also order sanctions because Defendants failed to prepare their Rule 30(b)(6) designees.  Despite designating half a dozen witnesses, all but one were unable to testify on topics for which they were designated as related to Defendants' organizational knowledge, as opposed to the designee's personal understandings.

A court may order sanctions when a party's designee under Rule 30(b)(6) fails to appear for a deposition.  Fed. R. Civ. P. 37(d)(1).  An organization's 30(b)(6) designees "must" be able to "testify about information known or reasonably available to the organization."  Fed. R. Civ. P. 30(b)(6); *see also Int'l Ass'n of Machinists & Aerospace Workers v. Werner-Masuda*, 390 F. Supp. 2d 479, 487 (D. Md. 2005) (party is "obligated to produce one or more 30(b)(6) witnesses who were thoroughly educated about the noticed deposition topics with respect to any and all facts known to [the party] or its counsel").  Accordingly, "producing an unprepared witness is tantamount to a failure to appear," as is "[p]roviding evasive, incomplete answers to relevant questioning."  *Paice, LLC v. Hyundai Motor Co.*, No. CIV. WDQ-12-0499, 2014 WL 3819204, at *20 (D. Md. June 27, 2014) (internal quotation and citation omitted).

Five of Defendants' six 30(b)(6) designees were not sufficiently prepared to offer organizational testimony and did little, if anything, to educate themselves to be able to provide testimony reflecting Defendants' knowledge.  *See supra* at 15-19.  Each of these designees also

offered no more than their personal knowledge and/or professed their lack of personal knowledge over some topics for which they had been designated. *See id.*

These depositions did not occur all in the same day; the closest two were still two days apart, and the latter three depositions took place seven weeks after the first set. Accordingly, Defendants' counsel, upon hearing their witnesses time and again fail to answer questions, and being put on notice of their failings, *e.g.*, Ex. HH at 180-83; Ex. T at 69:22-72:15, could and should have done more to ensure later witnesses were prepared. They did not.

The prejudice to Ms. Eller is clear: Despite taking six different depositions to cover 14 topics, Ms. Eller still does not have information as to what Defendants know on subjects material to Ms. Eller's claims, including the implementation of nondiscrimination training in individual schools for students and faculty, how internal complaints of discrimination were addressed prior to 2014, how faculty were evaluated during Ms. Eller's tenure, what disciplinary actions were imposed on students and faculty that discriminated against Ms. Eller (if any), and how or why Defendants failed to maintain student discipline files. *See supra* at 15-19. These topics are all central to Ms. Eller's inquiry as to how Defendants responded—or failed to respond—to the frequent and pervasive incidents of discrimination she experienced and her resulting requests for training that might have prevented such incidents, or at least prepared Defendants' employees to address them appropriately.

## IV.    Discovery Sanctions Requested

As noted above, Ms. Eller has provided Defendants with numerous opportunities over 16 months of discovery to fulfill their discovery obligations. Defendants' spoliation could not be solved by extending discovery again. Their failure to produce documents or prepare Rule 30(b)(6) designees could be partially addressed by an extension, but Defendants have not taken advantage of opportunities to do better before, and any extension would add delay and cost,

32

furthering the prejudice Ms. Eller has experienced.  Moreover, Defendants have demonstrated a consistent track record of not complying with discovery obligations; it is this cumulative behavior which makes the need for compensatory and deterrent sanctions especially appropriate here.

Accordingly, the only fair and reasonable remedy is to impose sanctions that ensure Defendants cannot take advantage of their own failures to contend at trial or in a dispositive motion that Ms. Eller cannot prove the affected elements of her claims or to surprise Ms. Eller with new evidence.  Nor should Defendants be permitted to downplay the severity and significance of the events described by Ms. Eller, having deprived her of evidence that would prove that.  And the only way to compensate for increased costs and to deter future behavior is with monetary sanctions.  Indeed, sanctions that have a deterrent effect are especially appropriate given that Defendants' spoliation and failure to produce in this case are both the result of Defendants' established general practices concerning litigation holds and document searches.  *See supra* at 3-5, 9-10.  Defendants are likely to violate their obligations in future litigation without such sanctions.

*First*, Ms. Eller requests that the Court hold now, and eventually instruct the jury, that the 11 statements set out in the Motion are established facts for the purposes of this action and/or take them as adverse inferences.  Ms. Eller has crafted these statements with time limitations, where appropriate, so as not to overreach and cover those few topics and time periods as to which Defendants' designees *could* testify cogently or which have been evidenced by Defendants' production of post-fall 2014 electronic documents.

*Second*, Ms. Eller requests that the Court enter the two preclusion orders set out in the Motion to protect Ms. Eller from surprise from new evidence at trial or accompanying a motion for summary judgment.

33

*Third*, Ms. Eller requests that the Court enter monetary sanctions that would compensate Ms. Eller for the increased discovery costs Defendants' behavior has caused, also as set forth in the Motion.

*Finally*, Ms. Eller requests that the Court enter any other sanction it deems appropriate to protect and compensate Ms. Eller and deter Defendants from future similar behavior.

## CONCLUSION

For the foregoing reasons, Ms. Eller requests that the Court order sanctions against Defendants in the form of established facts/adverse inferences, preclusion orders, and monetary sanctions, as well as any other sanction the Court deems appropriate.


Dated:  August 21, 2020                          Respectfully submitted,

                                                 */s/ Elliott C. Mogul*

Omar Gonzalez-Pagan                              Paul Pompeo (admitted *pro hac vice*)
(admitted *pro hac vice*)                        Douglas F. Curtis (admitted *pro hac vice*)
Carl Charles (admitted *pro hac vice*)           Lori B. Leskin (admitted *pro hac vice*)
LAMBDA LEGAL DEFENSE AND                          Elliott C. Mogul (admitted *pro hac vice*)
EDUCATION FUND, INC.                             Thomas McSorley (No. 18609)
120 Wall Street, 19th Floor                      Michael Rodríguez (admitted *pro hac vice*)
New York, NY 10005                               Rebecca Neubauer (admitted *pro hac vice*)
Telephone: (212) 809-8585                        ARNOLD & PORTER
Fax: (212) 809-0055                              KAYE SCHOLER LLP
Email: ogonzalez-pagan@lambdalegal.org           601 Massachusetts Ave., NW
ccharles@lambdalegal.org                         Washington, DC  20001-3743
                                                 Telephone:  +1 202.942.5000
                                                 Fax:  +1 202.942.5999
                                                 Email: paul.pompeo@arnoldporter.com
                                                 douglas.curtis@arnoldporter.com
                                                 lori.leskin@arnoldporter.com
                                                 elliott.mogul@arnoldporter.com
                                                 tom.mcsorley@arnoldporter.com
                                                 michael.rodriguez@arnoldporter.com
                                                 rebecca.neubauer@arnoldporter.com

*Attorneys for Plaintiff*

34