IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JENNIFER ELLER,                              *

         Plaintiff,                          *

v.                                           *        Case No. TDC-18-3649

PRINCE GEORGE'S COUNTY PUBLIC                *
SCHOOLS, *et al.,*
                                             *
         Defendants.
                              *     *     *     *     *     *

## MEMORANDUM OPINION

Pending before the Court is Plaintiff's Motion for Sanctions ("Motion") (ECF No. 75).[1] The Court has considered the submission of the parties (ECF Nos. 75, 80 & 82) and finds that a hearing is unnecessary. *See* Loc. R. 105.6. Plaintiff's Motion will be granted in part and denied in part.

## I.      BACKGROUND

Discovery in this employment discrimination case closed on August 13, 2020. *See* ECF Nos. 69 & 74. One day before discovery closed, Plaintiff filed notice of her intent to seek sanctions for deficiencies in Defendants' discovery responses. ECF No. 72. The Court granted Plaintiff leave to file the Motion, ECF No. 73, and it is now ripe for consideration.

Plaintiff, a woman who is transgender, brought this case against Defendants Prince George's County Public Schools, *et al.* for the alleged discrimination, hostile work environment, and retaliation she suffered while employed as an educator by Defendants on the basis of her sex, gender identity, and transgender status. ECF No. 4 ¶ 1. Plaintiff's Amended Complaint generally

---

[1] This case was referred to me for discovery. ECF No. 37.

alleges that she endured harassment and suffered discrimination from faculty, staff, and students while employed by Defendants. Plaintiff alleges that Defendants ignored her complaints about the discrimination and made inadequate efforts to address it. Ultimately, Plaintiff alleges that this unlawful conduct resulted in her constructive termination.

Several dates are material to the resolution of the Motion. Plaintiff began her employment as a teacher with Defendants in 2008. ECF No. 4. ¶ 15. Plaintiff started as an English teacher at Kenmoor Middle School, a position she held until the spring of 2011. *Id.* ¶¶ 33, 44. In March 2011, Plaintiff informed the principal at Kenmoor Middle School that she would be transitioning. *Id.* Soon thereafter, she began "to wear articles of traditionally-feminine attire, and immediately became the target of rampant harassment by staff and students alike." *Id.* ¶ 44. Plaintiff alleges that, rather than supporting her transition, Defendants demeaned her and directed her to present as a male. *Id.* Because of this abuse, Plaintiff transferred to Friendly High School for the 2011-2012 school year. *Id.*

According to Plaintiff, the situation was even worse at Friendly High School. *Id.* ¶ 45. In particular, during the 2015 school year Plaintiff "became the target of pervasive and severe acts of discrimination based on her gender identity and sex." *Id.* Plaintiff alleges that on February 13, 2015, Associate Principal Paula Robinson repeatedly misgendered her, referring to her as "sir" and "mister," even after being corrected multiple times. *Id.* ¶ 69. Plaintiff did not stay silent about this degrading conduct. On February 20, 2015, Plaintiff filed an Incident Report through Defendants' internal grievances process. *Id.* ¶ 71. And on June 3, 2015, Plaintiff filed a Discrimination Charge with the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 93.

About a year later, in April 2016, Plaintiff was subject to a disciplinary hearing during which she was accused of shouting at students, failing to properly teach her classes, and throwing

a pen at a student. *Id.* ¶ 97. Plaintiff was not disciplined at the conclusion of the hearing, but she did elect to take unpaid leave pursuant to the Family and Medical Leave Act ("FMLA"). *Id.* ¶ 98. Before taking the leave, however, Plaintiff decided to transfer to a different school. After some delay in processing Plaintiff's transfer request, Defendants transferred Plaintiff to James Madison Middle School on August 21, 2016, a few days before that semester's classes were to begin. *Id.* ¶ 99.

Unfortunately, Plaintiff also suffered harassment from students at the new school. *Id.* ¶ 100. Plaintiff took a leave of absence beginning October 7, 2016, which she maintained through the spring of 2017. *Id.* ¶ 107. Plaintiff resigned her position on August 18, 2017. *Id.* ¶ 108. On September 26, 2017, the EEOC issued a determination finding reasonable cause to believe that Ms. Eller "was subjected to harassment, based upon her sex and gender identity, and unequal terms and conditions of employment, in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended." *Id.* ¶ 26. The U.S. Department of Justice issued a Notice of Right to Sue to Plaintiff on August 31, 2018. *Id.* ¶ 27. Plaintiff filed this lawsuit on November 28, 2018. ECF No. 1.

## II.    ANALYSIS

Plaintiff argues that the Court should enter sanctions against Defendants for three reasons: Defendants committed spoliation by failing to preserve relevant evidence after litigation was reasonably foreseeable; Defendants failed to properly respond to Plaintiff's request for the production of emails; and Defendants failed to produce sufficiently prepared designees for the Rule 30(b)(6) depositions. The Court will address these issues below.

## A.      Spoliation

Spoliation is the "destruction or material alteration of evidence . . . or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (internal citations omitted). In order to prove that spoliation warrants a sanction, a party must show that:

> (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a culpable state of mind; and (3) the evidence that was destroyed or altered was relevant to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.

*Charter Oak Fire Ins. Co. v. Marlow Liquors, LLC*, 908 F. Supp. 2d 673, 678 (D. Md. 2012) (internal citations, quotation marks, and brackets omitted); *see also Sampson v. City of Cambridge, Md.*, 251 F.R.D. 172, 179 (D. Md. 2008) ("This standard applies when a party is seeking any form of sanctions for spoliation, not just an adverse inference jury instruction").

Plaintiff seeks sanctions against Defendants for their alleged spoliation of three categories of evidence: PS-74 forms, surveillance camera footage, and certain email messages.

### 1.      Timing of Plaintiff's Motion

Defendants object to Plaintiff's Motion on the grounds that it is untimely, at least as to the PS-74 forms. ECF No. 80-1 at 6. Defendants argue that Plaintiff was aware of Defendants' failure to preserve the PS-74 forms on July 17, 2019, but she waited until the close of discovery, more than one year later, to file the Motion.[2] *Id.* at 7. Defendants also note that Plaintiff deposed four of

---

[2] Plaintiff filed notice of her intent to file a motion for sanctions on August 12, 2020, one day before the discovery deadline. Although the Motion was not filed until August 21, 2020, under Judge Chuang's Case Management Order, Plaintiff's Motion is deemed to have been filed before the close of discovery. *See* ECF No. 3 at 2 ("The timely filing of a Notice, within the time period

Defendants' principals between November 2019 and March 2020. *Id.* Plaintiff questioned each witness about the PS-74 forms during these depositions. Defendants argue that Plaintiff was dilatory in bringing the missing PS-74 forms to the Court's attention and that this warrants the denial of the Motion. *Id.*

Plaintiff argues that she "diligently pursued discovery and repeatedly requested more information from [Defendants] about the status of [their] production and about the circumstances" of the loss or destruction of the purportedly spoliated documents, including the PS-74 forms. ECF No. 82 at 15. Her efforts to obtain discovery from all available sources and to obtain information about Defendants' purported spoliation, she argues, demonstrate that she was not dilatory in filing the Motion. *Id.* Moreover, Plaintiff argues, Defendants are not prejudiced because they have been permitted an opportunity to fully respond to Plaintiff's arguments about spoliation. Even if the Motion had been filed in July 2019, Plaintiff notes, Defendants' response likely would have been the same. The timing of Plaintiff's Motion has not affected Defendants' ability to oppose it.

Under the circumstances, Plaintiff's Motion will not be denied for untimeliness. Although Rule 37 "does not contain a statute of limitations" for filing spoliation motions, courts nonetheless consider a number of factors in assessing the timeliness of such motions:

> (1) how long after the close of discovery the relevant spoliation motion has been made; (2) the temporal proximity between a spoliation motion and motions for summary judgment; (3) whether the spoliation motion was made on the eve of trial; and (4) the explanation of the moving party as to why the motion was not filed earlier should be considered.

*Al-Sabah v. Agbodjogbe*, No. ELH-17-730, 2019 WL 4447235, at *4 (D. Md. Sept. 17, 2019) (internal citations and quotation marks omitted).

---

to file the underlying motion to which it relates, will toll the time to file such motion until the date set by the Court at the Pre-Motion Conference; no motion for an extension is necessary.").

The record indicates that Plaintiff made sincere efforts to obtain discovery that had been lost by Defendants and information about how the loss occurred. Even though the Motion was technically filed within the discovery period, the Court agrees with Defendants that Plaintiff should have filed the Motion sooner. *See Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 508 (D. Md. 2009) (noting that "there is a particular need for [spoliation] motions to be filed as soon as reasonably possible after discovery of the facts that underlie the motion"). Like most spoliation motions, Plaintiff's Motion is fact-intensive. The parties' submissions related to the (non-dispositive) Motion exceed 500 pages. It has taken the Court considerable time to review the parties' submissions. As a result, there has been some delay in this case and this delay is attributable to the timing of Plaintiff's Motion. *See* ECF No. 78 (tolling deadlines pending resolution of Plaintiff's Motion). If Plaintiff's Motion had been filed sooner it would have already been resolved. Still, Plaintiff does not seek additional discovery as a remedy for Defendants' spoliation. ECF No. 82 at 17. And Defendants are not prejudiced by any delay caused by the time it has taken for the Court to resolve the Motion. As dispositive motions have not yet been filed, Defendants will be able to account for any sanction imposed by the Court in their forthcoming motion for summary judgment. Finally, the ongoing COVID-19 pandemic has disrupted the Court's trial calendar. The parties are unlikely to get a trial date in the near future. This would be the case even if Plaintiff had filed her Motion earlier. The Court will not deny Plaintiff's Motion on this basis.

### 2. Duty to Preserve

Turning back to the merits of Plaintiff's Motion, the first matter to consider is when Defendants' duty to preserve the potentially spoliated evidence arose. Once a party reasonably anticipates litigation, it is obligated to implement a "litigation hold" to ensure that potentially

relevant evidence under its control is identified, located, and preserved for use in the anticipated litigation. *Goodman*, 632 F. Supp. 2d at 511; *see also Silvestri*, 271 F.3d at 591 ("The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation.") The duty of preservation applies to

> any documents or tangible things . . . made by individuals "likely to have discoverable information that the disclosing party may use to support its claims or defenses." The duty also includes documents prepared *for* those individuals, to the extent those documents can be readily identified (*e.g.,* from the "to" field in e-mails). The duty also extends to information that is relevant to the claims or defenses of *any* party, or which is "relevant to the subject matter involved in the action." Thus, the duty to preserve extends to those employees likely to have relevant information—the "key players" in the case.

*Goodman*, 632 F. Supp. 2d at 511-12.

Plaintiff argues that Defendants' duty to preserve arose "when Ms. Eller's supervisors learned about her allegations of harassment." ECF No. 75-1 at 24. This would have been as early as May 2011, when Plaintiff wrote several emails to administrators documenting harassment from students and staff. ECF No. 75-3. Alternatively, Plaintiff argues that "at a minimum, the obligation would have attached at the time Ms. Eller filed a formal internal complaint in February 2015" regarding the harassment she experienced by Assistant Principal Robinson, or when she filed a charge of discrimination with the EEOC in June 2015. ECF No. 75-1 at 25.

Defendants' obligation to preserve the potentially spoliated evidence arose on or about July 14, 2015, when Defendants first received notice of Plaintiff's EEOC Charge.[3] ECF No. 80-1 at 17.

---

[3] This is the date of the EEOC's Notice to Defendants that Plaintiff had filed a Charge of Discrimination. ECF No. 75-10 at 2. Although Plaintiff filed her EEOC Charge on June 3, 2015, ECF No. 75-10, there is no evidence that Defendants were notified of this Charge until they received the EEOC's Notice dated July 14, 2015.

Although Plaintiff's February 2015 incident report about the harassment she experienced by a staff member (*see* ECF No. 75-9) should also have alerted Defendants to the need to preserve potentially relevant evidence for use in future litigation, this evidence is not at issue in Plaintiff's Motion. Plaintiff does not contend that Defendants destroyed evidence relevant to her allegation that she was harassed by Assistant Principal Robinson on February 13, 2015. And although this incident report also refers to Plaintiff being situated "in an environment where [Assistant Principal Robinson] and others routinely misgender[ed]" her, this was not enough to put Defendants on notice of the prospect of litigation. Unlike Plaintiff's very specific complaint about Assistant Principal Robinson's misconduct, her reference to an "environment" where she was "routinely" misgendered lacked specificity. And unlike the redress she requested for Assistant Principal Robinson's misconduct (an apology and an administrative reassignment), she sought only "trans awareness and sensitivity training" for other staff and faculty.

### 3.    Loss or Destruction of Potentially Relevant Evidence

The next issue is whether potentially relevant evidence in the control of Defendants was destroyed after July 14, 2015. Three categories of evidence are at issue: PS-74 forms, surveillance camera footage, and emails.

### a.    PS-74 Forms

Plaintiff alleges in her Amended Complaint that Defendants did not appropriately respond to the harassment directed at her from students, even after she complained about the harassment. At least some of Plaintiff's complaints of harassment were lodged using PS-74 Student Discipline Referral forms, which Plaintiff sought in discovery. There is no dispute that PS-74 forms contain formal documentation of student conduct and, "when completed, the resulting disciplinary action to address the misconduct, if any." ECF No. 75-1 at 8-9. The completed PS-74 forms are relevant

to Plaintiff's claims because they might provide evidence of the specific incidents of harassment directed at Plaintiff and Defendants' response to the incidents.

Defendants "concede that they had a duty to preserve PS-74 Forms as a matter of policy." ECF No. 80-1 at 7.  "PS-74 Forms were required to be placed into student files and maintained as student records." *Id.* Nonetheless, in a letter to Plaintiff dated July 17, 2019, Defendants informed Plaintiff that they did not maintain the PS-74 reports of the students that Plaintiff sought. ECF No. 75-17 at 2. Apparently, PS-74 reports were not maintained in the student disciplinary files at Friendly High School. Instead, they were kept in separate notebooks by the Administrator at Friendly High School, and those notebooks "are no longer in existence prior to 2016." *Id.* Defendants attribute the failure to preserve the PS-74 Forms to "guidance secretaries failing to perform their duties at Friendly High School." *Id.*

At all relevant times, Defendants had control over the completed PS-74 forms.[4] The official copies of the forms were supposed to be maintained in the students' disciplinary files as a matter of Defendants' own policy. Putting Defendants' internal policy aside, Defendants had an obligation to preserve the PS-74 Forms beginning on or about July 14, 2015. Although it is unclear when Defendants destroyed the PS-74 forms relevant to this case, Defendants' admission that PS-74 forms predating 2016 "are no longer in existence" means that at least some of the forms were destroyed after Defendants had an obligation to preserve them.

---

[4] There is evidence that Plaintiff also had copies of some of the PS-74 forms, even if they were not complete. Besides what has been produced to her in discovery, the copies of the forms that Plaintiff maintained in her classroom were lost or destroyed after Plaintiff's resignation. The Court will address this issue in connection with the matter of prejudice.

### b.    Surveillance Camera Footage

The second category of evidence that has been lost or destroyed is surveillance camera footage of the alleged incidents of harassment and discrimination. During discovery, Plaintiff requested that Defendants produce security camera recordings of all incidents of harassment against her. ECF No. 75-1 at 15. To assist Defendants in responding to her request, Plaintiff provided three dates when she was harassed: September 13, 2013, August 17, 2015, and September 23, 2015. *Id.* at 15-16. Defendants responded that they had not retained recordings from any of these dates.

Defendants did not have a duty to preserve surveillance footage from September 13, 2013, because their obligation to preserve potentially relevant evidence began on or about July 14, 2015. Because Defendants were not required to preserve evidence predating July 14, 2015, the loss or destruction of surveillance footage from September 13, 2013, cannot be counted as spoliation.

Similar analysis applies to the surveillance footage of the incidents alleged to have occurred in 2015. Although these incidents occurred after Defendants' obligation to preserve arose, the Court finds that Defendants had no duty to preserve them. Defendants have security cameras at locations throughout the school property where Plaintiff worked. According to Defendants, the camera system called "Dedicated Macros" was in place between 2011 and 2016 at Friendly High School. ECF No. 80-13 at 5. These cameras "basically run 24/7" and overwrite their contents as their storage drives are filled. *Id.* Cameras that captured more "activity," such as cameras positioned by a main entrance or in a cafeteria, recorded at a higher rate at certain times of day, and filled up faster than cameras that positioned in mostly-empty hallways. *Id.* at 5-6. Some of the cameras store just three to four weeks of footage before their content is overwritten, and others may store several months' worth of footage. *Id.* at 5.

10

Assuming that Plaintiff made complaints about the incidents of August 17, 2015 or September 23, 2015, when they occurred, there is no evidence that Plaintiff notified Defendants that footage from certain security cameras for these dates might be relevant to her complaints about harassment and discrimination. For this reason, the Court is unable to find that Defendants should have known to preserve this evidence.

Defendants argue that Plaintiff did not put them on notice that her EEOC Charge concerned a continuing violation until she amended it in April 2016. ECF No. 80-1 at 20. That is largely beside the point. Even assuming that Plaintiff's original EEOC Charge put Defendants on notice of a continuing violation,[5] the Court is uncertain how Defendants could have known to preserve security footage from certain cameras for August 17, 2015, and September 23, 2015. The Court finds that Defendants had no duty to preserve all security footage from all cameras throughout the school where Plaintiff worked beginning with their receipt of her EEOC Charge.[6] Defendants' failure to preserve any security footage from August 17, 2015, and September 23, 2015, is not spoliation.[7]

---

[5] Plaintiff may not have explicitly described the harassment and discrimination she faced as a continuing violation, but she did describe continued subjection to harassment "on a frequent basis." ECF No. 75-10 at 5.

[6] The parties did not address the standard for spoliation of electronically stored information ("ESI") under Fed. R. Civ. P. 37(e), at least beyond noting the discretion district courts have to enter sanctions for spoliation. It would seem that the surveillance camera footage would qualify as ESI. Applying the Rule 37(e) standard would lead to the same result that the Court reaches here because Defendants did not have a duty to preserve the security footage from August 17, 2015, and September 23, 2015, at the time that it would have been overwritten by the camera system. *See* Fed. R. Civ. P. 37(e), Committee Notes on Rules—2015 Amendment ("Rule 37(e) is based on this common-law duty; it does not attempt to create a new duty to preserve. The rule does not apply when information is lost before a duty to preserve arises.").

[7] Even assuming that Defendants should have known, or actually did know, that security camera footage from August 17, 2015, and September 23, 2015, might be relevant in future litigation, Plaintiff has not suffered prejudice sufficient to warrant any spoliation sanction under the spoliation doctrine or under Rule 37(e)(2). Defendants note that "Plaintiff did not even inquire in discovery, let alone, provide the Court with evidence as to where specifically cameras were

c.        Emails

A third category of evidence that has been lost is emails. Teachers, staff, and students at Defendants' schools are issued school email accounts to communicate. ECF No. 75-1 at 10. Because Plaintiff "suffered much of the harassment, and reported much of the harassment, through her school email," she requested "communications that would be expected to be found among emails sent and received using Defendants' email system" in discovery. *Id.* One of the objections that Plaintiff raises to Defendants' discovery production is that Defendants failed to preserve potentially relevant emails after they had an obligation to do so.

Since November 1, 2015, Prince George's County Public Schools has used Google Apps for email service. ECF No. 80-1 at 13. Google Apps includes the Google Vault service, which archives all emails of the system's users. *Id.* Google Vault keeps copies of users' emails even if the emails are deleted by a user from their mailbox. *Id.* at 14. In addition to emails dated November 1, 2015, to the present, the school system's Google Vault contains emails that were stored from the predecessor program used by Defendants. These emails date back to November 1, 2014. *Id.*

Emails that predate November 1, 2014, are another story. Defendants only have access to these emails if they are logged in as the user and do a manual search of the user's mailbox. *Id.* Because these emails are not stored in the school system's Google Vault, if the emails were deleted from the user's mailbox, they are not retrievable. *Id.* Put another way, all emails sent or received

---

located . . . in relation to Plaintiff's classroom or where alleged incidents of harassment allegedly took place." ECF NO. 80-1 at 21. Defendants state that "there are no cameras in classrooms" and the cameras do not capture sound. *Id.* Plaintiff has not carried her burden to prove that the loss of the surveillance camera footage deprives her "of a visual recording of some of the harassment [she experienced, demonstrating the severity of those incidents." ECF No. 82. There is no evidence before the Court that any cameras would have captured the harassment that Plaintiff suffered on August 17, 2015, or September 23, 2015. And because of the verbal nature of the harassment, the value of any surveillance footage that does not include sound is questionable.

by one of Defendants' users from November 1, 2014, to the present are stored in the Google Vault and accessible for retrieval. Emails that predate November 1, 2014, are only available for retrieval if they were not previously deleted by a user.

Because all emails postdating November 1, 2014, are stored in the Google Vault regardless of whether they have been deleted from a user's mailbox, only emails dated before November 1, 2014, may have been spoliated. And because Defendants' obligation to preserve relevant evidence did not arise until on or about July 14, 2015, only those emails deleted after July 14, 2015, may have been spoliated. Accordingly, the only emails that may have been spoliated are emails that predate November 1, 2014, that were deleted after July 14, 2015.

As the party seeking sanctions for Defendants' spoliation, Plaintiff bears the burden to establish that Defendants lost or destroyed potentially relevant emails after they were obligated to preserve them. *Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013); *Digital Vending Servs. Int'l, Inc. v. Univ. of Phoenix, Inc.*, No. 2:09CV555, 2013 WL 5533233, at *4 (E.D. Va. Oct. 3, 2013) ("[T]he burden to prove spoliation rests on the party seeking sanctions."); *Goodman*, 632 F. Supp. 2d at 509. Plaintiff has not met her burden.[8] Plaintiff argues that the absence of emails from Defendants' production suggests either that Defendants were careless in searching for the emails, or that the emails have been destroyed. But there is no evidence that any emails were destroyed after July 14, 2015, when Defendants were first obligated to preserve them. According to Defendants, Plaintiff did not inquire of Defendants' administrators in discovery whether they ever

---

[8] Because "the precise burden of proof in a motion for sanctions is unclear in the Fourth Circuit," *see Glynn v. EDO Corp.*, No. JFM-07-1660, 2010 WL 3294347, at *2 (D. Md. Aug 20, 2010), "the general approach of courts in the Fourth Circuit has been to apply the clear and convincing evidence standard, especially where a harsh sanction like an adverse inference is sought." *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 104 (E.D. Va. 2018). Here, the result is the same under either standard.

deleted emails or documents relating to Plaintiff. ECF No. 80-1 at 17. If Plaintiff had made these inquiries, she may have uncovered evidence to support her argument that relevant emails were deleted after Defendants were required to preserve them. In addition, Defendants' failure to institute a litigation hold is not evidence that relevant emails were lost or destroyed. While the failure to institute a litigation hold may provide evidence relevant to a party's culpability under the spoliation doctrine, when there is no proof that any evidence has been lost or destroyed, there is no basis for the Court to consider a party's culpability.[9] Accordingly, the Court cannot find that Defendants have committed spoliation with regard to the purportedly missing emails.

### 4.   Culpability

Having found that Defendants did not spoliate the emails and surveillance camera footage, the Court will now return to consideration of the PS-74 forms. The Court has already concluded that Defendants had an obligation to preserve the PS-74 forms starting on or about July 14, 2015, and that Defendants failed to preserve them. The Court must now consider whether Defendants acted with a culpable state of mind when the PS-74 forms were lost or destroyed, and whether the lost evidence is "relevant" to Plaintiff's claims.

"In the Fourth Circuit, for a court to impose some form of sanctions for spoliation, any fault—be it bad faith, willfulness, gross negligence, or ordinary negligence—is a sufficiently

---

[9] The parties do not address the implications of Rule 37(e) on Defendants' alleged spoliation of the emails. This rule provides that if (1) ESI that should have been preserved in anticipation of litigation is permanently lost because a party failed to take reasonable steps to preserve it, and (2) another party is prejudiced by that loss, then (3) the Court "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). If the loss occurred because a "party acted with the intent to deprive another party of the information's use in litigation," the Court may issue sanctions, including adverse inferences, dismissal, and default judgment, even if there is no prejudice. Fed. R. Civ. P. 37(e)(2). Here, Plaintiff has not shown that any emails were lost that "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e)(1). And Plaintiff has certainly not shown that Defendant acted with ill intent in failing to preserve any of the emails that may have been destroyed. Fed. R. Civ. P. 37(e)(2).

culpable mindset." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 529 (D. Md. 2010) (*citing Goodman*, 632 F. Supp. 2d at 518, 520). In the context of spoliation, ordinary negligence is the failure to identify, locate, and preserve evidence, where a reasonably prudent person acting under like circumstances would have done so. *See In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 299 F.R.D. 502, 519 (S.D.W. Va. 2014). A finding of gross negligence requires a similar showing as ordinary negligence, but to a greater degree. *Id.* Willfulness and bad faith will only be found where a party has engaged in "intentional, purposeful, or deliberate conduct." *Id.* (quoting *Victor Stanley*, 269 F.R.D. at 529). While bad faith requires the destruction of evidence "for the purpose of depriving the adversary of the evidence," *Goodman*, 632 F. Supp. 2d at 520, willfulness only requires a demonstration of intentional or deliberate conduct resulting in spoliation. *Buckley v. Mukasey*, 538 F.3d 306, 323 (4th Cir. 2008).

The Defendants' loss or destruction of the missing PS-74 forms was grossly negligent.[10] First, Defendants had an official policy regarding the preservation of the PS-74 forms. ECF No. 80-1 at 7. In violation of this policy, the guidance secretaries at Friendly High School did not maintain the forms in the student disciplinary files. Instead, the forms were maintained in separate notebooks by the Administrator of Friendly High School. Inexplicably, the notebooks containing

---

[10] The Defendants' culpability does not rise to the level of willfulness or bad faith. There is no evidence that Defendants intended to destroy the missing PS-74 forms, either to prevent them from being used in litigation or for any other reason. The evidence suggests that the PS-74 forms were lost or destroyed by Defendants' guidance secretaries in contravention of Defendants' policy that the PS-74 forms be maintained in student disciplinary files. This does not amount to willful or bad faith conduct in the context of spoliation. *See Powell v. Town of Sharpsburg*, 591 F. Supp. 2d 814, 821 (E.D.N.C. 2008), *objections overruled,* No. 4:06-CV-117-F(2), 2009 WL 863348 (E.D.N.C. Mar. 27, 2009) (finding a defendant's destruction of evidence was willful where documents were "deliberately destroyed . . . pursuant to [a] document retention policy" and explaining that there was "no evidence suggesting that defendant's destruction of the work orders was negligent, such as the result of failure by an employee to follow instructions not to destroy them") (citing *Buckley*, 538 F.3d at 323).

the PS-74 forms prior to 2016 were either lost or destroyed. Defendants' loss or destruction of these forms in violation of their own policy is evidence of gross negligence. Second, Defendants did not take reasonable steps to ensure that the PS-74 forms would be preserved after receiving notice of Plaintiff's EEOC Charge. *Equal Employment Opportunity Comm'n v. Performance Food Grp., Inc.*, No. CCB-13-1712, 2019 WL 1057385, at *6 (D. Md. Mar. 6, 2019) ("When no litigation hold has been instituted, courts have found such conduct to be grossly negligent.") (citing *Cognate Bioservices, Inc., et al. v. Smith*, No. WDQ-13-1797, 2015 WL 5158732 (D. Md. August 31, 2015)). Defendants concede that they did not institute a litigation hold to prevent the destruction of potentially relevant evidence. The Court is not as confident as Plaintiff that Defendants would have preserved the missing PS-74 forms even if a litigation hold had been issued. After all, Defendants already had a policy mandating the preservation of these specific forms. But Defendants' failed to take reasonable steps to even *attempt* to ensure the preservation of potentially relevant evidence, such as issuing a written litigation hold to the employees likely to be in possession of this evidence. This failure is not excused by Defendants' overstatement of the burden in issuing such a litigation hold. Not all 19,000 of Defendants' employees were responsible for the maintenance of the PS-74 forms. Defendants could have notified the employees responsible for maintaining the PS-74 forms, probably a handful of employees, with a simple request that the forms not be destroyed. Defendants' failure to do so is evidence of their gross negligence. *See generally Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 162 (2d Cir. 2012) (rejecting "the notion that a failure to institute a 'litigation hold' constitutes gross negligence per se" but noting that the failure to adopt good preservation practices is a relevant factor in determining whether discovery sanctions should issue).

### 5.      Relevance of Lost or Destroyed Evidence

Finally, the Court considers whether the missing PS-74 forms are "relevant" to Plaintiff's claims. "The test for relevance for purposes of establishing the third element is somewhat more stringent than merely meeting the standard provided in Federal Rule of Evidence 401." *Sampson*, 251 F.R.D. at 179. In the context of spoliation, lost or destroyed evidence is relevant if "a reasonable trier of fact could conclude that the lost evidence would have supported the claims or defenses of the party that sought it." *Victor Stanley*, 269 F.R.D. at 531 (internal citations omitted). In addition, in order for a court to impose sanctions, "the absence of the evidence must be prejudicial to the party alleging spoliation." *Id.* ("Put another way, a finding of 'relevance' for purposes of spoliation sanctions is a two-pronged finding of relevance and prejudice."); *Sampson*, 251 F.R.D. at 179 ("The burden is on the aggrieved party to establish a reasonable possibility, based on concrete evidence rather than a fertile imagination, that access to the lost material would have produced evidence favorable to his cause.") (quoting *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 167 F.R.D. 90 (D. Colo. 1996)).

### a.      General Relevance

The missing PS-74 forms might have supported Plaintiff's claims. If, as Plaintiff alleges, Defendants did not impose serious discipline on students that harassed her (assuming for the sake of argument that such discipline would be appropriate), the forms would provide documentary evidence of this lack of discipline. Defendants do not argue that the forms are irrelevant, but rather that Plaintiff has not suffered any prejudice from the loss.

### b.      Prejudice

First, Defendants argue that Plaintiff is not prejudiced by the loss or destruction of the PS-74 forms because Plaintiff herself failed to preserve copies of these forms. Apparently, Plaintiff

kept copies of the PS-74 forms that she had turned in to administrators in a locked cabinet in her classroom. *See* ECF No. 80-1 at 8. But when Plaintiff went out on FMLA leave she did not request that the materials in the locked cabinet (including the PS-74 forms) be preserved or returned to her. *Id.* Plaintiff bears some responsibility for the loss of the files in her cabinet. By the time she went on FMLA leave, Plaintiff had already filed her EEOC Charge and was aware of the need to preserve potentially relevant evidence for use in litigation. Plaintiff should have requested that Defendants preserve the contents of her filing cabinet—or at least her copies of the PS-74 forms— for use in litigation. But even so, it is likely that Plaintiff's copies of the PS-74 forms were incomplete.[11] And she likely expected Defendants to adhere to their own policy of preserving the PS-74 forms. Even if Plaintiff bears responsibility for the loss of her copies of the PS-74 forms, she is still prejudiced by Defendants' loss of the complete PS-74 forms.

Next, Defendants argue that even if some PS-74 forms have been lost or destroyed, "approximately forty-three (43) PS-74 Forms completed and submitted by Plaintiff to her administrators were retrieved from Plaintiff's email account and produced in discovery." ECF No. 80-1 at 9. These forms documented incidents from September 2011 to March 2015. But according to Defendants, only three of the forms "addressed instances of alleged harassment relating to Plaintiff's transgender status." *Id.* The problem with Defendants' argument is that the retrieval of some of the PS-74 forms does not completely cure the prejudice. Plaintiff is still without evidence of the type of discipline imposed on students because the copies from her email account did not contain this information.

---

[11] Plaintiff testified that she never received "completed" copies of the forms (that is, forms documenting what discipline was imposed in connection with her complaints). ECF No. 82-4 at 6. Defendants dispute this. ECF No. 80-1 at 9. Plaintiff disagrees with Defendants' characterization of the deposition testimony. ECF No. 82 at 12-13. For reasons explained below, this dispute is not material to the resolution of the Motion.

Defendants argue that Plaintiff is not prejudiced by the loss of the PS-74 forms because there is other evidence to substantiate Plaintiff's claims regarding incidents of harassment. ECF No. 80-1 at 9. Again, this does not completely cure the prejudice to Plaintiff from the loss of the PS-74 forms. There is limited evidence regarding the specific discipline imposed on students for harassing Plaintiff.[12] And this undercuts Defendants' other argument that the loss of the PS-74 forms is harmless to Plaintiff because she can't remember the names of the students that harassed her. *Id.* at 10. Because there is other evidence of the harassment that Plaintiff experienced, Plaintiff is able to identify the students that harassed her. But since Defendants have lost the PS-74 forms, there is no way for Plaintiff to discover what discipline was imposed on those students.

Defendants' argument regarding Plaintiff's delay in filing her EEOC Charge is not relevant to the Court's consideration of the spoliation of the PS-74 forms, at least not at this moment. If Defendants raise this argument with the presiding judge and are successful in their attempt to limit the scope of Plaintiff's claims, it is possible that the loss of the PS-74 forms could be less prejudicial to Plaintiff. At this time, however, Plaintiff's claims have not been limited in scope and the prejudice to her from the loss of the PS-74 forms remains.

The Court finds that Defendants' loss of the PS-74 forms is prejudicial to Plaintiff. In some ways, the degree of prejudice is reduced by the availability of other discovery regarding the harassment that Plaintiff experienced. But Plaintiff remains prejudiced in her ability to prove that

---

[12] Defendants note that four principals were deposed "regarding their responses to incidents from which they could recall and the responses they believe they would have taken based on the guidelines from the Student Code of Conduct." ECF No. 80-1 at 12. Plaintiff notes that the "administrators' testimony that they followed the Student Code of Conduct in imposing discipline is too vague to be of use: the Code provides for a wide range of discipline for the category of infraction ('disrespect') that administrators used to characterize Ms. Eller's reports of harassment—from a 'reprimand' to in-school suspension and psychological referrals." ECF No. 82 at 17.

Defendants failed to impose appropriate discipline on students that harassed her. Defendants' loss or destruction of the PS-74 forms constitutes spoliation.

### 6.    Sanctions for Spoliation

The Court must now determine what sanction is appropriate for Defendants' spoliation. Courts have "broad discretion" to choose a spoliation sanction, but the "applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *Silvestri*, 271 F.3d at 590 (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). Courts may impose a number of types of sanctions for spoliation: "assessing attorney's fees and costs, giving the jury an adverse inference instruction, precluding evidence, or imposing the harsh, case-dispositive sanctions of dismissal or judgment by default." *Victor Stanley*, 269 F.R.D. at 533 (citing *Goodman*, 632 F. Supp. 2d at 506). "When assessing what sanction to impose, courts consider the degree of  culpability and the extent of the prejudice, if any." *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, Inc., 803 F. Supp. 2d 469, 499-500 (E.D. Va. 2011). A court must "impose the least harsh sanction that can provide an adequate remedy." *Id.* at 534 (quoting *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 469 (S.D.N.Y. 2010)).

In the Fourth Circuit, an adverse inference is only available as a sanction for spoliation if the spoliator's loss or destruction of the evidence was done willfully or in bad faith.[13] *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450 (4th Cir. 2004) (explaining that an adverse inference "cannot be drawn merely from [the] negligent loss or destruction of evidence; the inference

---

[13] The Fourth Circuit's standard is in line with Fed. R. Civ. P. 37(e)(2). *See* Fed R. Civ. P. 37, Committee Notes on Rules—2015 Amendment (noting that the revised rule "rejects cases such as *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99 (2d Cir. 2002), that authorize the giving of adverse-inference instructions on a finding of negligence or gross negligence").

requires a showing that the party knew the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction.") (quoting *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir.1995)); *see also Digital Vending*, 2013 WL 5533233, at *5 ("The sanctions available differ with the level of fault; for instance, the imposition of an adverse inference requires a finding of willfulness or bad faith."); *Sampson, Md.*, 251 F.R.D. at 181 ("In order for the court to give an adverse inference instruction, plaintiff must establish that defendant acted either willfully or in bad faith in failing to preserve relevant evidence, while, if the court finds that the defendant's conduct was merely negligent, an adverse inference instruction is not an appropriate sanction.").

### a.    Plaintiff's Proposed Sanctions

Plaintiff proposes a number of sanctions for Defendants' spoliation. *See* ECF No. 75. These proposed sanctions fall into two categories: jury instructions and preclusion orders.[14] Because the Court does not find that Defendants' conduct regarding the emails and the video surveillance footage constitutes spoliation, some of the proposed sanctions are inappropriate. Other proposed sanctions are unsuitable because they do not serve the purposes of sanctions under the spoliation doctrine. And other sanctions are unavailable because of Defendants' degree of culpability.

Plaintiff's first, second, fourth, and fifth jury instructions concern Defendants' failure to institute a litigation hold, the date upon which Defendants' duty to preserve potentially relevant evidence arose, and the nature of the evidence lost as a result of Defendants' failure to institute a litigation hold. *Id.* at 1-2. The Court will adopt a form of these instructions below. The Court declines to adopt the sanctions as proposed by Plaintiff because it is not necessary for the jury to

---

[14] Plaintiff proposes other sanctions unrelated to spoliation (proposed jury instructions nine, ten, and eleven). ECF No. 75 at 3-4. For reasons explained below, these sanctions are unwarranted.

know what a litigation hold is, let alone the date when Defendants had an obligation to preserve potentially relevant evidence for possible litigation. Part of the fourth and fifth proposed instructions direct the jury to make adverse inferences. This is not appropriate given the degree of Defendants' culpability.

Plaintiff's third proposed jury instruction concerns the loss of surveillance camera footage. The sixth, seventh, and eighth jury instructions concern the loss of emails. Because Defendants did not spoliate the surveillance camera footage or the emails there is no basis to issue corresponding sanctions. *Id.* at 3.

In addition to the proposed jury instructions, Plaintiff requests that the Court preclude Defendants from "offering evidence . . . not already produced during discovery, including testimony by witnesses about documents or video recording that may or may not have existed before having been lost or destroyed by Defendants."[15] *Id.* at 4. The Court will preclude Defendants from offering evidence not already produced during discovery regarding the contents of the missing PS-74 forms. The intent of this order will be to preclude Defendants from offering evidence about the specific discipline imposed on students that harassed Plaintiff to the extent that such evidence has not already been produced to Plaintiff. Otherwise, Plaintiff's proposed preclusion order is too broad. As written, it would likely result in the unfair preclusion of relevant testimony and, in turn, disputes about the meaning of the preclusion order itself.[16]

---

[15] Plaintiff proposes a second preclusion order but it relates to Defendants' Rule 30(b)(6) designees, not the spoliation of evidence. ECF No. 75 at 5.

[16] Some of Plaintiff's proposed sanctions address evidentiary issues that might still be addressed in a motion *in limine* or as an objection at trial. To be clear, this order does not preclude Plaintiff from seeking such relief at the appropriate time. She just can't obtain the relief she seeks as a sanction for spoliation. *See Performance Food Group,* 2019 WL 1057385, at *18 ("The wholesale preclusion of the evidence at issue, as requested by plaintiff is not warranted at this stage of the proceedings. These issues are more appropriately addressed by the trial judge at a later juncture.")

b.      **Appropriate Sanctions**

The Court finds that a jury instruction is appropriate as a sanction for Defendants' spoliation of the PS-74 forms. In imposing this sanction, it is the Court's intention to cure the prejudice that Plaintiff would otherwise suffer because of the spoliation of the PS-74 forms and to deter Defendants from repeating the mistakes that led to this spoliation in the future. As other courts have done, I leave it to the presiding judge's ultimate determination as to whether such an instruction is appropriate at the time of trial. *See Reed v. Honeywell Int'l, Inc.*, No. CV07-0396-PHX-MHM, 2009 WL 886844, at *11 (D. Ariz. Mar. 31, 2009), *as amended* (Apr. 27, 2009)*11; *Goodman*, 632 F. Supp. 2d at 525 (D. Md. 2009) (internal quotation marks omitted) ("The precise contours of the . . . jury instruction are best reserved for determination by [the presiding district judge] in making the jury charge for trial."). This instruction does not instruct the jury to draw any adverse inference from the loss of the PS-74 forms.

I recommend that the presiding judge instruct the jury as follows (provided the instruction is appropriate in light of the evidence presented and issues in dispute at trial):

> You have heard evidence that Ms. Eller was subject to harassment by students on the basis of her transgender status during her tenure at Friendly High School. Other evidence about this harassment and the discipline imposed on these students was contained in written forms. These forms have been lost by Defendants. If the forms had not been lost, they would have described the harassment that Ms. Eller experienced. The forms would also have shown whether the students responsible for the harassment were disciplined and what kind of discipline was imposed. Defendants bear the sole responsibility for the loss of this evidence.

I further recommend that the presiding judge preclude Defendants from (1) arguing that the lost or destroyed PS-74 forms corroborated Defendants' version of events regarding the type of discipline imposed on students that harassed Plaintiff, and (2) offering any evidence about the contents of the PS-74 forms not already produced in discovery.

In crafting these sanctions, I have considered the degree of Defendants' culpability and the amount of prejudice Plaintiff faces as a result. Because Defendants acted with gross negligence (but not willfully or in bad faith), the remedies available to the Court are somewhat limited. As explained above, the Court cannot issue adverse inference instructions under these circumstances. But an instruction to the jury is still warranted to minimize the prejudice to Plaintiff from Defendants' spoliation. This instruction does not instruct the jury to infer that the evidence Defendants lost would have been beneficial to Plaintiff, but it also does not let Defendants off the hook. Because of the limitations on adverse inference instructions in the Fourth Circuit, this lesser sanction must suffice. Regarding the preclusion orders, my intent is to prevent Defendants from gaining an evidentiary advantage as a result of their spoliation.

Plaintiff also requests an award of attorney's fees and costs to reimburse her for expenses incurred in connection with "discovery efforts necessary to repeatedly follow up on the status and completion of Defendants' production between July 10, [2019] and March 2, 2020" and "[d]iscovery efforts to explore Defendants' litigation hold and document retention practices."[17] ECF No. 75 at 5. Courts are permitted to impose reasonable expenses on a spoliating party as a sanction for spoliation. *Victor Stanley*, 269 F.R.D. at 533. The imposition of costs and fees "compensate the prejudiced party but also punish the offending party for its actions and deter the litigant's conduct, sending the message that egregious conduct will not be tolerated." *Id.* at 536 (internal quotation marks omitted). In determining whether the imposition of fees and costs is warranted, the Court focuses "more on the conduct of the spoliating party than on whether

---

[17] Plaintiff also requests an award of expenses for "[d]iscovery postdating the April 30, 2020 deposition of Ms. Tranmer, when Defendants' misrepresentation about their email retention and collecting was revealed, requiring a new round of production from Defendants and analysis by Plaintiff." ECF No. 75 at 5. For reasons discussed below, Plaintiff is not entitled to an award of such expenses.

documents were lost, and, if so, whether those documents were relevant and resulted in prejudice to the innocent party." *Id.* Courts may "award costs or fees in conjunction with a spoliation motion as an alternative to a harsher sanction." *Id.*

The imposition of costs and fees is not warranted here. Plaintiff's Motion has largely been denied as it relates to spoliation. Plaintiff only prevailed with respect to the issue of the PS-74 forms. But even then, much of the relief that Plaintiff sought is unavailable to her under controlling Fourth Circuit law. In addition, Defendants' culpability in the loss or destruction of the PS-74 forms is somewhat limited. Defendants' failure to institute a litigation hold and their violation of an internal policy regarding the preservation of PS-74 forms was grossly negligent, but the Court does not find that the imposition of monetary sanctions would be effective to deter such negligence in the future. Had Defendants acted willfully or in bad faith, monetary sanctions would be warranted. They are not appropriate under the circumstances here.

## B.      Sufficiency of Defendants' Email Production

The Court now turns to the sufficiency of Defendants' email production. During discovery, Plaintiff propounded document production requests on Defendants pursuant to Rule 34. Defendants responded to the requests but their response was piecemeal, delayed, and, at least according to Plaintiff, incomplete. Plaintiff seeks sanctions against Defendants for failing to properly respond to the document requests.

The Court will not entertain Plaintiff's complaints about Defendants' methods of collecting responsive emails or the timing of the production of these emails. Plaintiff could have brought these concerns to the Court in a motion to compel discovery but she did not do so. Putting aside the issue of spoliation, this Court will only impose sanctions against a party for its discovery failures if the party (1) violated a court order, *see* Fed. R. Civ. P. 37(b), or (2) completely ignored

the party's discovery obligations, *see* Fed. R. Civ. P. 37(d). Here, Defendants did not violate any order regarding discovery, so sanctions are not available under Rule 37(b).[18] And while Plaintiff complains that Defendants' discovery responses were delayed and that their ultimate production seems incomplete, Defendants actually responded to all of Plaintiff's discovery requests. Sanctions are only available under Rule 37(d) where a party fails to serve any response to interrogatories or document production requests. *See 8B* Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 2291 (3d ed. Oct. 2020 Update) ("The provisions of Rule 37(d) with regard to interrogatories [or requests under Rule 34] do not apply for anything less than a serious or total failure to respond.").[19] Here, Defendants actually responded to Plaintiff's document requests, and their responses are not so evasive or misleading as to be a "serious or total failure to respond." *Id.* The Court has no basis to sanction Defendants in connection with their production of emails and rejects Plaintiff's argument on this issue.

---

[18] On June 19, 2020, the Court granted Defendants' motion to modify the scheduling order (ECF No. 66) "to allow Defendants to retrieve the documents and run the search terms that were requested by Plaintiff and agreed to by Defendants." ECF No. 69. But this was not an order compelling discovery that Defendants can be said to have violated.

[19] There is some authority in the Fourth Circuit that indicates Rule 37(d) sanctions may issue against a party that provides misleading or evasive answers to discovery requests under Rule 33 and Rule 34. *See Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 40 (4th Cir. 1995) (stating that the court has upheld "imposition of sanctions [under Rule 37(d) for a misleading answer to an interrogatory regarding the identity of a defendant's expert witness" but acknowledging other authority establishing that Rule 37(d) is inapplicable in the absence of a "serious or total failure to respond to interrogatories"); *see also Basch v. Westinghouse Elec. Corp.*, 777 F.2d 165, 174 (4th Cir. 1985) (imposing sanctions under Rule 37(d) against a party that produced intentionally evasive discovery responses). Even assuming that Rule 37(d) can apply when a party actually serves discovery responses, it still does not apply here. There is nothing in the record to indicate that Defendants' ultimate discovery responses are evasive or misleading like the responses at issue in *Hathcock* and *Basch*. In addition, there is no indication that Defendants acted in bad faith or attempted to gain a tactical advantage over Plaintiff by producing evasive or misleading discovery responses. If Plaintiff believed that Defendants' discovery responses were deficient, the better practice would have been to seek an order compelling discovery. This would have allowed Plaintiff to obtain the discovery she sought (if Defendants complied with the order) or meaningful sanctions (if Defendants did not).

### C.      Defendants' Production of Rule 30(b)(6) Designees

Plaintiff also seeks sanctions against Defendants for their purported failure to prepare their Rule 30(b)(6) designees. According to Plaintiff, "[d]espite designating half a dozen witnesses, all but one were unable to testify on topics for which they were designated as related to Defendants' organizational knowledge, as opposed to the designee's personal understandings." ECF No. 75-1 at 33. Plaintiff argues that sanctions are warranted under Rule 37(d)(1) because Defendants' failure to produce prepared Rule 30(b)(6) designees was tantamount to not producing any witnesses at all. *Id.*

In general, sanctions are only available under Rule 37(d)(1) where a deponent fails to appear for a deposition or terminates a deposition without complying with Rule 30(d)(3). *Williams v. PUMA N. Am., Inc.*, No. TJS-19-3340, 2020 WL 6684901, at *3 (D. Md. Nov. 12, 2020). Plaintiff relies on *Paice, LLC v. Hyundai Motor Co.*, No. WDQ-12-0499, 2014 WL 3819204, at *20 (D. Md. June 27, 2014), for the proposition that sanctions are warranted under Rule 37(d)(1) even when a deponent appears for a deposition.[20] Although Rule 37(d), read literally, only applies to a deponent's failure to appear for a deposition, it has been extended by some courts to apply to institutional parties that fail to make a proper designation under Rule 30(b)(6), even where the designee actually appears for the deposition. *See, e.g., Coryn Grp. II, LLC v. O.C. Seacrets, Inc.,*

---

[20] I disagree with *Paice*'s interpretation of Rule 37 because it conflates the standard of Rule 37(a)(4), which only applies to subdivision (a), with the standard of subdivision (d). If it were the case, as *Paice* implies, that every "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond" under Rule 37(d) (and not just under Rule 37(a)), there would be little need for a party seeking discovery to ever file a motion to compel; the party could proceed directly to seeking sanctions. This is simply not consistent with the way that Rule 37 is written and it runs counter to the weight of other authority. See 7 *Moore's Federal Practice* - Civil § 37.91 (2020) ("[I]n view of the fact that [Rule 37(a)(4)] limits its own reach to subdivision (a) of Rule 37, which only permits expense shifting sanctions, it is not literally applicable to subdivision (d).").

265 F.R.D. 235, 239–40 (D. Md. 2010) ("[A] corporation that wholly fails to educate a corporate designee without justification is subject to mandatory monetary sanctions under Rule 37(d).")

I have reviewed the parties' submissions about the disputed Rule 30(b)(6) testimony. I find that Defendants' 30(b)(6) designees were not so unprepared that their appearance was tantamount to not appearing at all. To the extent that Defendants' designees were not sufficiently prepared, Plaintiff was not without recourse. She could have sought to reconvene the depositions, either with the consent of Defendants or through an order of the Court. *See Scott v. Old Navy, LLC*, No. GLR-18-1189, 2019 WL 5682800, at *3 (D. Md. May 13, 2019) (explaining that "if a designee is prepared in good faith but unable to provide answers to a significant number of questions, the 30(b)(6) deposition may have to be reconvened, possibly with a new witness") (emphasis, internal citation, and quotation marks omitted); *see also Macsherry v. Sparrows Point, LLC*, No. ELH-15-022, 2018 WL 1123696, at *2 (D. Md. Mar. 1, 2018), *rev'd on other grounds*, 973 F.3d 212 (4th Cir. 2020) ("[I]f plaintiff believed that Rule 30(b)(6) had been violated, [she] could have requested a new deponent, moved to compel, and sought sanctions."). Defendants state that they offered Plaintiff "the opportunity to take additional depositions to redress any concerns she had regarding the corporate designee testimony," but Plaintiff did not respond to this offer. *See* ECF No. 80-1 at 22.

The Court concludes that there is no basis to sanction Defendants for their purported failures regarding their Rule 30(b)(6) designees. Defendants did not violate any Court order regarding the Rule 30(b)(6) depositions, and no designee was so unprepared or nonresponsive to Plaintiff's questions that their appearance was tantamount to failing to appear. Further, Defendants offered Plaintiff "the opportunity to take additional depositions to redress any concerns she had regarding the corporate designee testimony," but Plaintiff did not respond to this offer. ECF No.

28

80-1 at 22. Under these circumstances, the issuance of sanctions under Rule 37(d) is not appropriate.

## III.    CONCLUSION

For the reasons set forth above, Plaintiff's Motion is granted in part and denied in part. The Court finds that Defendants committed spoliation of the PS-74 forms and that the sanctions set forth above are warranted. To the extent that the sanctions sought by Plaintiff in her Motion are consistent with those set forth above, the Motion is granted. Otherwise, the Motion is denied. A separate Order will be issued to accompany this Memorandum Opinion.


December 11, 2020                                              /s/
Date                                              Timothy J. Sullivan
                                              United States Magistrate Judge